Commonwealth Appeal.

Argued April 21, 1966. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargument refused July 25, 1966.

*William R. Mosolino,* Assistant Attorney General,
with him *Michael R. Deckman,* Assistant Attorney Gen-
eral, *John R. Rezzolla,* Deputy Attorney General, and

*Walter E. Alessandroni*, Attorney General, for Commonwealth, appellant.

*Burton Spear*, with him *Edmund V. Ludwig*, and *Biester and Ludwig*, for appellees.

OPINION BY MR. JUSTICE COHEN, June 24, 1966:

On October 28, 1964, the Governor of the Commonwealth of Pennsylvania approved certain limited access highway plans and drawings which two days earlier had been approved by the Secretary of Highways. On November 9, 1964 these plans and drawings were recorded in the Office of the Recorder of Deeds of Bucks County.

Two sets of drawings are involved. Except for the Legislative Route and Station designations, they bear similar legends, as follows:

"DRAWINGS ESTABLISHING LIMITED ACCESS HIGHWAY AND DESIGNATING FUTURE LOCATION AND WIDTH OF

* * * *

THIS PLAN PREPARED PURSUANT TO SECTION 2 OF THE ACT OF MAY 29, 1945, P. L. 1108, AS AMENDED, AND SECTION 219 OF THE ACT OF JUNE 1, 1945, P. L. 1242."

Under dates of November 16, 1964, and November 19, 1964, the District Engineer of the Department of Highways sent identical letters to Burton and Catherine Spear (appellees) advising them of the filing of these plans, indicating to them how their property was affected by the plans and quoting from §219 of the Act of June 1, 1945, P. L. 1242, to the effect that the Secretary of Highways is authorized to designate the future location and width of a proposed highway and that no owner of property affected thereby may improve his property thereafter except at the risk of foregoing damages therefor. The letters concluded with the following paragraph: "Please note that your land has *not*

been condemned; rather, the Commonwealth has signified its intention to construct the aforesaid highway improvement at some future time, probably within five (5) years. Prior to any actual condemnation of your property, department employees will contact you to negotiate the purchase of that portion of your property required for the highway project."

On December 18, 1964, appellees petitioned the Court of Common Pleas of Bucks County for the appointment of viewers pursuant to §502(e) of the "Eminent Domain Code," Act of June 22, 1964 (Spec. Sess.), P. L. 84, 26 P.S. §1-502(e). Referring to the aforementioned plans and to the absence of the filing of a declaration of taking by the Department of Highways, appellees contended that the Department's action nonetheless constituted a taking of their property by the Commonwealth for which they were entitled to compensation.

The Department moved to dismiss the petition, alleging there had been no condemnation. The court below disagreed and overruled the motion. Subsequently, proceedings were held before the viewers who made an award to appellees.

The Commonwealth appealed to the court below raising an objection similar to its initial one. The court dismissed the objection and an appeal to this Court followed pursuant to §§517 and 523 of the "Eminent Domain Code." The Commonwealth again argues that no condemnation has occurred as a result of its action, while appellees contend the contrary.

Section 219 of the Act of June 1, 1945, P. L. 1242, the "State Highway Law," 36 P.S. §670-219, reads as follows: "The secretary, with the approval of the Governor, may designate the future location and width of any proposed highway, and continue to maintain the present highway until such time as the amount of traffic warrants the construction of the new highway

designated and until such new highway has been completed and opened to traffic.

"Whenever the secretary shall establish the width and lines of any such highway he shall cause a plan thereof to be made, showing the center line of said highway and the established width thereof, and shall attach thereto his acknowledgment. Thereupon such plan, and acknowledgment shall be recorded in the office of the recorder of deeds of the proper county in a separate book kept for such purpose, which shall be furnished to the recorder of deeds by the county commissioners at the expense of the county.

"No owner or occupier of lands, buildings, or improvements shall erect any building or make any improvements within the limits of any State highway the width and lines of which have been established and recorded as provided in this section, and if any such erection or improvement shall be made no allowance shall be had therefor by the assessment of damages.

"Any damages sustained by the taking of private property under the provisions of this section for the construction of such highway shall be ascertained and paid as provided by Article III of this act."

Treating the action of the Department as what the Department says it was—a designation and establishment of the width and lines of a proposed highway—we must conclude that the action of the Department did not constitute a taking.

The law of Pennsylvania has developed to the point where, as was said in *Griggs v. Allegheny County*, 402 Pa. 411, 168 A. 2d 123 (1961) : "A 'taking' occurs when the entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property." 402 Pa. at 414, 168 A. 2d 124.

In the light of this standard, the action of the Department pursuant to §219 did not amount to a taking.

Appellees were in no way deprived of the use or enjoyment of their property. First, they might continue to treat it in any manner they pleased subject only to the assertion of non-compensation for improvements made subsequent to notice of establishment of the lines given by the Department. Second, by attempting to deprive appellees of compensation for subsequent improvements at the time the property actually would be condemned, §219 would have the effect of depriving appellees of their property for public use without compensation and would have to fall as invalid. Constitution of Pennsylvania, Art. I, §10. Consequently, §219 could not even deprive appellees of "the beneficial use and enjoyment" of their property to the extent of inhibiting future improvements.

This being the case, it follows that the Department accomplished nothing by its filing of the approved highway plans and thus effected no "taking" of appellees' property under §219.

Appellees also urge that the action of the Department was a condemnation of their property as authorized by other statutory provisions. Appellees base their contention on a number of factors. First, they point out that the procedure followed by the Department and the character of the plans themselves, apart from the reference to §219 in the cover page legend, conformed closely to the requirements of §210 of the "State Highway Law", supra, 36 P.S. §670-210. This section authorizes the Secretary of Highways to take current action for highway purposes and provides that the Governor's approval shall be considered to work a condemnation. The execution, approval and recording of the plans were in conformity with §210.

Moreover, the details shown on the plans, say appellees, indicate conformity to the requirements of §210 rather than the sketch-like notations required by §219. The nature of the action—limited access bypasses for

existing highways—also renders the relevance of §219 questionable. Finally, the plans were not filed in a special §219 plan book but in the regular highways plan book.

Second, appellees claim, since the action also involved the limiting of access of the highways referred to in the plans under the Act of May 29, 1945, P. L. 1108, as amended, 36 P.S. §§2391.1-2391.15, and since this Act contains no provision for a "reservation" of a future limited access highway, the action taken here must have been an actual condemnation in accordance with §210.

All of these facts indicate, at least, extremely careless procedures by the Department of Highways. They could, at most, indicate an actual condemnation as appellees claim. While we are not unmindful of the maxim that things are what they are, not what they are said to be, we nevertheless hesitate to impute an exercise of the power of condemnation to the sovereign under the circumstances here of a long-standing practice not considered to be a "taking" and of somewhat ambiguous statutory procedures. Rather, we believe it best to leave both parties as they began: the Commonwealth having done nothing to effect a "taking" and appellees having full right to do whatever they wish with their property without detriment to their right to damages if the Commonwealth subsequently "takes" their property.

The order of the court below is reversed and the proceedings are remanded to said court with instructions to dismiss appellees' petition for the appointment of viewers.

_____

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I am in complete agreement with the majority's disposition of the instant case. However, I find it

presently inappropriate for this Court to express its view with respect to a constitutional issue which is not presently confronting it.

In the instant case, there has been no "taking" of appellees' property. Thus, the issue of whether the Commonwealth, under §219 of the Act of 1945, may avoid payment for improvements made to property subsequent to notification to the condemnee of an intention to condemn is not presently before the Court. As inviting as the issue may be, in light of the questionable nature of the provision, in the absence of a "taking", an improvement subsequent to notice, and a refusal by the Commonwealth to consider such improvement as an element of damages, any consideration of the constitutionality of the issue is premature.