## Cohen Petition

*Lawrence N. Ravick* and *John W. Mamula*, for petitioners.

*Richard W. Kelly*, for respondent.

ALDISERT, J., January 3, 1967.—Before the court are preliminary objections asking the court to vacate a previous order appointing viewers. On May 19, 1966, petitioners filed petitions for the appointment of viewers, alleging a constructive taking of their real estate, and the court granted the prayer of the petition. On May 27, 1966, the board of viewers viewed the subject property. On June 7 and 8, 1966, the City of Pittsburgh and the Urban Redevelopment Authority of Pittsburgh filed preliminary objections to the appointment of viewers.

The City of Pittsburgh (hereinafter called "city") and the Urban Redevelopment Authority of Pittsburgh (hereinafter called "Urban") argue that there has been no constructive taking by Urban or city.

All parties agree that there has been no declaration of taking filed as contemplated in section 402 of the Eminent Domain Code of June 22, 1964, P. L. (Spec. Session, 1964) 87, 26 PS §1-402, and that the theory of petitioners is that there has been a compensable injury suffered without a declaration of taking being filed. Filing a petition for the appointment of viewers under proper circumstances in such cases is permitted by section 502 (e) of the Eminent Domain Code, 26 PS §1-502 (e). The city and Urban contend that proper circumstances are not present in this case.

It is the position of petitioners that certain acts of the planning commission of the city in declaring the Wood Runs District of the city a "blighted" area was an act which constituted a constructive taking of their property. At a special meeting held April 15, 1965, the Planning Commission of the City of Pittsburgh offi-

cially certified the property of petitioners to be within a blighted area designated as Redevelopment Area no. 15—Woods Run District. On May 7, 1965, Urban officially certified the property of petitioners to be within a blighted area appropriate for an urban renewal project, and that the development of the area for predominantly nonresidence uses was necessary for the proper development of the community. Pittsburgh City Council, by resolution number 138, dated May 28, 1965, ordained that the property of petitioners was within an area that is a "slum, blighted, deteriorated or deteriorating area appropriate for an Urban Renewal project", and then proceeded to approve surveys and plans for an urban renewal project in the proposed urban renewal area.

These actions follow the requirement of the Urban Redevelopment Law of May 24, 1945, P. L. 991, as amended, 35 PS §1701 et seq.

The issue before us is simply to determine whether the various actions of the city and Urban constitute a "compensable injury" as this term is used in section 502 (e) of the Eminent Domain Code.

It is urged by petitioners that, irrespective of a formal declaration of taking, and despite the fact that Urban as yet has not completed the statutory proceedings to condemn the property in question, they have been, in fact, deprived of the use of their property because of the deterioration of the neighborhood.

They suggest that the public notice of the possibility that Urban will take over their neighborhood has in itself caused a deterioration of the property. They demonstrate that they were involved in proceedings instituted by the Department of Public Safety of the city which declared that the premises subject to these proceedings at 1-15 Monhagan Street, 1-15 Petosky Street, 32-58 Petosky Street, 32-78 Ceredo Way and 60-78 Petosky Street were characterized as con-

demned, unsafe, and dangerous. Illustrative of the conditions of the premises is the notice for 32-78 Ceredo Way:

". . . mortar disintegrated in stone foundation; sills rotted; joists out of level, studding out of plumb. Exterior walls out of plumb, siding rotted, loose. Window frames and sash rotted, some removed, glass broken out, doors broken; gutters rotted; downspouts rusted off. Floors out of level; interior walls out of plumb; plaster loose, falling off. Frame extensions rotted, sagging. Buildings open, vandalized; unfit and unsafe for occupancy and in present condition constitute a serious fire hazard and menace to safety".

The writer of this opinion had before him at April term, 1966, 3144-45, appeals by petitioners herein from the "Notice of Condemnation" issued by the city. On June 1, 1966, we signed a consent order permitting withdrawal of those appeals after numerous conferences in chambers with all parties.

Petitioners admit the conditions asserted by the Department of Public Safety. They argue, however, that it would have been impracticable for them to institute broad-base repairs of these premises because of the eminent domain proceedings which *probably, if not absolutely*, were to be instituted in the relatively immediate future by Urban. Similarly, they argue that the act of tearing down the structures on the premises, as suggested by the city as an alternative to repairs, would deprive them of the opportunity of receiving fair market value of the structures on the land if and when the formal eminent domain proceedings would follow.

They further argue, and this is the heart of their position, that the disintegrating condition of their premises is due to the impending acquisition proceedings to be instituted by Urban.

Urban and the city contend that petitioners are free

and have been free to use their property in any lawful manner as they should desire; that they are at liberty to repair or demolish and reconstruct their properties without sanction, penalty or limitation of their rights to seek and demand just compensation for their property under the conditions as they may exist on the date of any future "taking" of their property by eminent domain, should this occur.

We feel that it is not necessary to take testimony in support of the positions set forth by the parties. There is no dispute as to the facts. The dispute is simply over the legal conclusions to be deduced therefrom.

We shall sustain the preliminary objections.

In Commonwealth Appeal, 422 Pa. 72, at pages 75-77, the Supreme Court had before it a matter relating to a constructive taking by the Highways Department. The department moved to dismiss the petition, alleging there had been no condemnation, and the Supreme Court ultimately sustained the Commonwealth, stating:

"Appellees were in no way deprived of the use or enjoyment of their property. First, they might continue to treat it in any manner they pleased subject only to the assertion of non-compensation for improvements made subsequent to notice of establishment of the lines given by the Department".

We perceive this case to mean that the Supreme Court has determined that the test of whether or not there has been a constructive taking is whether petitioners have been deprived of the use or enjoyment of their property.

Although the city has called upon petitioners to repair or remove the structures on their premises in compliance with the ordinances and laws relating to public safety, health, and morals, it has not deprived petitioners of the use or enjoyment of their property.

For us to hold otherwise would be to make out a case

of "constructive taking" every time a proper governmental agency issued a notice to property owners to conform to the provisions of proper ordinances of a city, resolutions of a county, or statutes of the Commonwealth.

In vacating the order appointing viewers, we are not depriving petitioners of a proper remedy at a proper time. We feel that petitioners will be adequately protected by section 604 of the Eminent Domain Code:

"Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value": 26 PS §1-604.

It is our belief that section 604 was deliberately inserted in the Eminent Domain Code to take care of the precise situation before the court.

But declaring that petitioners will receive full protection under this section of the Eminent Domain Code is not to adjudicate that we are determining as a matter of law that the conditions of deterioration which existed on the premises of petitioners at the time of the actions complained of by petitioners (the actions of the planning commission on April 15, 1965, of Urban on May 7, 1965, of Pittsburgh City Council on May 28, 1965, or the Department of Public Safety, through its orders of February 2, 1966, ordering petitioners to repair or remove the structures, or subsequent thereto) were created by the "general knowledge of the imminence of condemnation".

We simply decide that, if and when eminent domain proceedings are instituted by Urban, petitioners will have the opportunity to present their case before an

appropriate board of viewers, and if they have indeed suffered because of the "general knowledge of the imminence of condemnation", they will have the opportunity of presenting evidence in support of their position.

Because of our treatment and disposition of this matter, it is unnecessary to discuss the other points suggested in the arguments and briefs of the parties. One aspect of this case does deserve additional comment, and that is the necessity of delineating a distinction between the corporate entities of the city and Urban.

We perceive Urban to be a corporate entity separate and distinct from the city. The Urban Redevelopment Act of May 24, 1945, P. L. 991, section 4(a), 35 PS 1704(a), states:

"There are hereby created separate and distinct bodies corporate and politic, one for each city and one for each county of the Commonwealth, as herein defined. Each such body shall be known as the Redevelopment Authority of the city or the county, as the case may be, but shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function". See Belovsky v. Redevelopment Authority of Philadelphia, 357 Pa. 329.

In Schwartz v. Urban Redevelopment Authority of Pittsburgh, 411 Pa. 530, 536, the Supreme Court stated:

"The Authority is a public body exercising public powers of the Commonwealth as an agency thereof".

We find, therefore, that actions of Urban could not under these circumstances afford a basis for a "taking" by the city.

ORDER

And now, to wit, January 3, 1967, after argument and consideration of briefs, it is ordered, adjudged

and decreed that the preliminary objections heretofore filed by the City of Pittsburgh and by the Urban Redevelopment Authority of Pittsburgh be and the same are sustained, and the order of court of May 19, 1966, appointing viewers, be and the same is hereby vacated.