Commonwealth's Crosstown Expressway
Appeal.

Argued February 11, 1971, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MANDERINO, MENCER and ROGERS.

*David A. Johnston, Jr.,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Fred Speaker,* Attorney General, for appellant.

*Eugene F. Brazil,* for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 12, 1971:

This is an appeal by the Department of Highways (now the Department of Transportation) from the lower court's dismissal of its preliminary objections to the appointment of viewers. The question on appeal is whether the lower court properly concluded that the well pleaded averments of a property owner's petition for the appointment of viewers are legally sufficient to state a cause of action for compensable injury by reason of a *de facto* taking. We are without the benefit of the lower court's reasoning in concluding as it did in that it has not filed a brief statement of its reasoning in the form of an opinion, contrary to our Rule 23.

On October 28, 1969, Simon Levine, the owner of premises known as 631 South Ninth Street in Philadelphia filed a petition for the appointment of viewers alleging compensable injury to his property by reason of certain acts and activity carried on by the Commonwealth incident to a highway project commonly known

as the proposed "Crosstown Expressway" in the City of Philadelphia.

The acts and activity of the Commowealth beginning in September 1967 alleged to constitute compensable injury to his property, and thus a *de facto* condemnation, consist of public proclamations of the proposed route; public statements of the imminence of condemnation which would probably occur on or before December 1, 1968; negotiating for and amicably acquiring properties within the proposed route; notice to tenants and owners of properties of the imminence of condemnation including tenants and prospective tenants of the petitioner's premises; appraisal activity; public announcements that just compensation would be paid to condemnees; and the urging of the City of Philadelphia to impede private development of properties within the proposed route and to approve the project. Also specifically averred is the loss of tenants by the property owner and his inability to find new tenants by reason of these acts and activity of the Commonwealth.

The petition concludes that as a result of such acts and activities petitioner has sustained "a substantial diminution of the value of Premises and its income derived therefrom, so as to cause a condemnation by taking thereof, and as a result of which Petitioners are entitled to just compensation under law."

It is not disputed that the "Crosstown Expressway" project, being a limited access highway, was subject to formal approval by the City of Philadelphia through enactment of an appropriate ordinance which has never occurred. Nor is it disputed that the Commonwealth has not filed a declaration of taking or notice of condemnation accompanied by a plan.

Subsection (e) of Section 502 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, 26 P.S. §1-502, provides:

"§1-502. Petition for the appointment of viewers

. . . .

"(e) If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury."[1]

An appeal was taken by the Commmonwealth on September 8, 1970 to the Superior Court and transferred to the Commonwealth Court by order dated October 20, 1970 pursuant to Section 507 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. (Act No. 223).

Do the averments contained in the property owner's petition for the appointment of viewers state a cause of action for compensable injury by reason of a *de facto* "taking"? In considering this question we follow ". . . the well established rule that preliminary objections (or pleadings in the nature thereof) admit as true all facts which are well and clearly pleaded, but not the pleader's conclusions or averments of law: [citing cases]." *Stahl v. First Pennsylvania Banking and Trust Company*, 411 Pa. 121, 126, 191 A. 2d 386, 389 (1963).

We have difficulty concluding with the facility which the lower court apparently did that the petition does set forth a legally recognized cause of action. Section 502(e) permits a landowner to petition for appointment of viewers where there has been a compensable injury to his property. He must conform to the regular requirements for such petition set forth in Section 502(a) and in addition specify the injury which constituted the *de facto* "taking".

---

[1] Subsection (a) sets forth the substantive requirements of such petition in terms of a *de jure* "taking" where a declaration of taking has been filed. Subsection (e) permits the same procedure to be followed where a series of actions by the condemnor amounts to a declaration of taking without formal action.

On the face of the petition, there is no averment of physical intrusion upon the land or of physical damage to the premises as a result of the Commonwealth's actions. Therefore petitioner is not contending that there has been an actual "taking" without formal declaration but rather his property has suffered damage by reason of governmental action amounting to a taking.

Under exceptional circumstances it has been held in Pennsylvania and elsewhere that governmental action demonstrating an intention to effect a public improvement and acting thereon in a manner demonstrating commitment to completion of the improvement amounts to a taking in a constitutional sense even though there had been no physical taking of the property alleged to have been injured. *Philadelphia Parkway*, 250 Pa. 257, 95 A. 429 (1915); 64 A.L.R. 542. However, the case law and treatise writers are far from a unanimous view of what action constitutes such a compensable injury without entry or physical intrusion. Snitzer in his treatise has termed such taking an "inverse condemnation". "For want of a more precise definition, an inverse condemnation occurs when the courts hold that the effect of the governmental action complained of is tantamount to the 'destruction, injury or damage' of private property for which just compensation must be paid, even though no formal condemnation proceedings have been instituted. [Section 502(e) enables an affected owner to petition for viewers to secure damages.] Griggs v. Allegheny County, 369 U.S. 84 (1962) reversing 402 Pa. 411 (1961) is the leading case in Pennsylvania. The United States Supreme Court held, in reversing the Pennsylvania Supreme Court, that low flying airplanes constituted a 'taking' for which viewers could award damages. 'A "taking" occurs when the entity clothed with the power of eminent domain substantially deprives an owner of the

6

beneficial use and enjoyment of his property.' Griggs, supra, at page 414." Snitzer, *Pennsylvania Eminent Domain*, 6, §201(1)-1(b), 1965-1970 Supplement (1965).

In accord with this view, it has been variously held that planning and other activities undertaken preliminarily to a proposed exercise of the power of eminent domain may or may not constitute a *de facto* "taking" depending upon the degree and quality of the damages imposed.

While the opinion's logic in *Griggs* is not limited to the eminent domain problems of airport operation, it provides only general guidelines in shaping a working definition of a nonphysical, *de facto* "taking" so as to require just compensation.

Another writer has suggested that such indirect injury to a protected private property interest is not a compensable injury absent some special constitutional directive.

"§6.38 'Damage' as a 'taking'.

"It is now an almost universally accepted doctrine that (in the absence of a special provision in the constitution to the contrary) when the devotion of land to the use for which it was taken injuriously affects neighboring land, in a manner that would be actionable at common law if the injury had been committed by a private individual without legislative sanction, but does not substantially oust the owner from the possession or deprive him of all beneficial use thereof, the owner of the injured land is not entitled to compensation under the constitution; for merely damaging property does not necessarily constitute a taking." 2 *Nichols on Eminent Domain*, §6.38 (1970).

The Eminent Domain Code of 1964, *supra*, has two provisions relating to indirect or consequential damages from road construction.

"§1-612. Consequential damages.

"All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken.

"1-613. Damages for vacation of roads.

"Whenever a public road, street, or highway is vacated, the affected owners may recover damages for any injuries sustained thereby, even though no land is actually taken."

Both provisions disclose a legislative intent to broaden the concept of compensable injury for consequential damages arising out of highway construction or abandonment of an existing highway. Under prior case law such damages were not considered to be within the constitutional concept of a compensable injury absent legislation allowing the same.[2]

In this case, of course, the property owner has not and cannot rely upon these sections as supporting the legal theory he advances. As pertaining to this case the most that can be said of these statutory provisions (and others allowing for heretofore unrecognized damages[3]) is an intention on the part of the legislature to broaden existing case law concepts of compensable damages within constitutional parameters.

It must be noted, however, that a common factor underlying these statutory provisions and the decisions already cited or referred to is that a formal condemnation involving a public improvement had occurred although not exercised against the property which was judicially declared to have been injured or declared by legislative enactment to be entitled to damages by

[2] See Comments Joint State Government Commission 1964 Report to these sections.

[3] Section 608 of the Act (removal expenses); Section 609 (business dislocation damages) and Section 610 (moving expenses).

reason of the condemnation. In the instant case this common factor is not present.

However, the property owner's theory is not entirely without support in our case law. In a somewhat analogous recent case a mandamus action sought to compel the defendant city to institute condemnation proceedings on the theory that the city and its redevelopment authority had carried on certain activities incident to a redevelopment project which amounted to a *de facto* condemnation. Judge McDevitt, in dismissing the complaint in mandamus, said:

"The court, therefore, concludes that plaintiff's proper remedy in this matter is to petition for the appointment of viewers. The redevelopment authority may file preliminary objections under section 406 of the code. Since subsection (e) provides in part, 'If an issue of fact is raised, the court shall take evidence by depositions or otherwise', it would seem that this procedure will allow for the most expeditious determination of the matter in issue.

. . . .

"[A]s I view this complaint, plaintiff is actually alleging an injury so severe as to amount to a complete and total destruction of his several properties. In these circumstances, assuming the truth of the allegations as made, it is no longer a question of discretion, but rather, a question of compensation." *Bleman v. City of Philadelphia*, 39 D. & C. 2d 446, 451-52 (1966).

Following the advice of *Bleman* the property owner here filed his petition and relies upon its brief exposition of this difficult question as supporting his position.

The Commonwealth relies on two recent Pennsylvania cases to support its position. In *Commonwealth Appeal*, 422 Pa. 72, 221 A. 2d 289 (1966), our Supreme Court concluded that the recording of a plan designating the future location and width of a proposed high-

way and the mailing of notices to the present property owners signifying an intention to develop the properties in the future did not constitute a *de facto* condemnation justifying payment of compensation. The court held that because only preliminary plans had been made and because the Commonwealth specifically denied any present intention to condemn: "[W]e believe it best to leave both parties as they began: the Commonwealth having done nothing to effect a 'taking' and appellees [property owners] having full right to do whatever they wish with their property without detriment to their right to damages if the Commonwealth subsequently 'takes' their property." 422 Pa. at 78.

We cannot here conclude as our Supreme Court did in *Commonwealth Appeal* that the government has done nothing to effect a "taking" for the petitioner's pleadings do aver that notifications of imminent condemnation (before December 1, 1968) were given to affected property owners. The Commonwealth went further here than merely stating an intention to "take" sometime in the future and took more positive preliminary action than in *Commonwealth Appeal* which involved collateral issues not here relevant.[4]

_____

[4] The opinion determined that Section 219 of the State Highway Law of June 1, 1945, P. L. 1242, 36 P.S. §670-219 to be violative of Article I, Section 10 of the Constitution of Pennsylvania. Section 219 provides that: "No owner or occupier of lands, buildings, or improvements shall erect any building or make any improvements within the limits of any State highway the width and lines of which have been established and recorded as provided in this section, and if any such erection or improvement shall be made no allowance shall be had therefor by the assessment of damages." Such provision had the effect of depriving a property owner of his property for public use without compensation. No similar issue of improvements made after initial notice of impending condemnation is made in the case at hand.

The Commonwealth also relies on *Cohen Petition*, 41 Pa. D. & C. 2d 692 (1967). In *Cohen*, a section of the City of Pittsburgh had been designated a "blighted" area and appropriate for urban renewal. The affected property owners argue that the mere designation of the area as "slum, blighted, deteriorated or deteriorating area" constituted a deprivation of property and a "compensable injury" under Section 502(e) of the Eminent Domain Code because, in line with the designation, the City ordered the property owners to repair or to remove deteriorating structures. Relying on *Commonwealth Appeal, supra,* the court said:

"Although the city has called upon petitioners to repair or remove the structures on their premises in compliance with the ordinances and laws relating to public safety, health, and morals, it has not deprived petitioners of the use or enjoyment of their property.

"For us to hold otherwise would be to make out a case of 'constructive taking' every time a proper governmental agency issued a notice to property owners to conform to the provisions of proper ordinances of a city, resolutions of a county, or statutes of the Commonwealth." 41 Pa. D. & C. 2d at 696-97.

We do not believe the Commonwealth can validly rely upon *Cohen* as supporting its position here. In this appeal we are not concerned with designation of "blighted areas" nor with governmental notices to conform to law or local ordinances.

We are concerned, however, with allegations which, if proven, suggest a course of action or conduct on the part of a government, clothed with the power of eminent domain, which may have deprived a property owner of real and material rights in and enjoyment of property ownership. If such be the case we believe the property in question has been injured within the meaning of the Eminent Domain Code. Therefore, we shall affirm the lower court order in dismissing the Com-

monwealth's preliminary objections. We believe that at least some of the allegations of the petition are sufficient to potentially establish compensable injury.[5]

Order affirmed.

---

[5] *See* Section 604 of the Eminent Domain Code, 26 P.S. §1-604, dealing with the effect upon the before and after fair market value of property where there is "general knowledge of the imminence of condemnation." On the record before us we cannot determine whether an element of damage claimed by petitioner is within this section and, if so, whether this section bars petitioner from *presently* asserting such a claim, particularly in light of the long delay which has already occurred prior to an actual condemnation.