Conroy-Prugh Glass Company *v.* Commonwealth.

Argued October 31, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*J. Craig Kuhn*, with him *Kuhn, Engle and Blair*, for appellant.

*Andrew L. Weil*, Special Assistant Attorney General, with him *Robert W. Cunliffe*, Deputy Attorney General, and *J. Shane Creamer*, Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, December 27, 1972:

This is an appeal from a decision of the Common Pleas Court of Allegheny County sustaining preliminary objections to a petition for the appointment of viewers.

The dispute in this case concerns preliminary planning for the Ohio River Boulevard Extension in the City of Pittsburgh. The Conroy-Prugh Glass Company (Conroy-Prugh) owns property at 1430 Western Avenue located near the northern end of the West End Bridge in Pittsburgh. Conroy-Prugh, the appellant, filed a petition for the appointment of viewers under Section 502(e) of the Eminent Domain Code of 1964, Act of June 22, 1964, Special Sess., P. L. 84, 26 P.S. §1-502(e), alleging compensable injury to its property for which no declaration of taking had been filed. Conroy-Prugh avers that since 1959, seven alternate routes have been displayed regarding the boulevard extension, all of which will involve the taking of its property. The publicity given to these plans is allegedly the cause of the "taking" in that tenants in Conroy-Prugh's building began vacating in 1966 and 1967, the principal tenant having left in 1968. Appellant claims that this rendered it unable to pay taxes causing the property to be

the subject of a pending City Treasurer's sale. The Pennsylvania Department of Transportation (Penn-DOT) contends that the project is "still in the preliminary design stage" and that no compensable injury has occurred at this time, especially since public notice and public hearings are required by law.

Basic to this type of action is the conflict between the public's right to know and the possible result thereof. With regard to proposed improvements, the requirement of advance publicity and public hearings (see §2002 of the Administrative Code of 1929, Act of April 9, 1929, P. L. 177, as amended, 71 P.S. §512) is designed to afford to the public and affected parties knowledge of planned public improvement projects and a right to be heard. This same publicity can result in the enhancement or depreciation of property values in the area of the proposed project. A loss of tenants is the negative consequence for which damages are claimed in the instant case.

Where no declaration of taking is filed, §502(e) of the Eminent Domain Code provides: "If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury."

Pursuant to this section, Conroy-Prugh petitioned for viewers to which PennDOT filed preliminary objections on the grounds that the petition fails to aver that a declaration of taking has been filed, fails to set forth any facts which would entitle Conroy-Prugh to any consequential damages, fails to set forth the date of the alleged taking or the manner in which the property was taken, fails to set forth a cause of action under the Eminent Domain Code, and that the board of viewers does not have jurisdiction. Conroy-Prugh then

filed a request for nine admissions, eight of which PennDOT admitted. Conroy-Prugh filed preliminary objections in the nature of a demurrer to PennDOT's denial of paragraph 8 of the request for admissions and also moved for summary judgment. The lower court denied the motion for summary judgment, sustained PennDOT's preliminary objections and vacated the petition for the appointment of viewers. It concluded that the action was "premature and . . . based on mere conjecture as to the route of the Commonwealth's proposed highway extension."

This Court has said that where a property owner has been deprived of "real and material rights in and enjoyment of property ownership" by a government "clothed with the power of eminent domain," a compensable injury within the meaning of the Eminent Domain Code may occur, if such deprivation is the result of a course of action or conduct on the part of that governmental body. *Commonwealth's Crosstown Expressway Appeal*, 3 Pa. Commonwealth Ct. 1, 10, 281 A. 2d 909, 913-14 (1971). The concept of a "de facto taking" is "responsive to the reality that activities carried on incident to massive, complex and time consuming programs launched by government to solve some of the acute problems that beset our society *may* so substantially interfere with one's use and enjoyment of his property as to constitute a compensable injury in a constitutional sense or as being within applicable statutory law, even though the power of eminent domain has not been formally exercised against the property in question and there has been no physical intrusion of it." *Hazleton Redevelopment Authority v. Hudock*, 2 Pa. Commonwealth Ct. 670, 675, 281 A. 2d 914, 917 (1971).

In *Crosstown*, after reviewing the developing case law on this subject, we noted the presence of a com-

mon factor in those decisions of the existence of a formal condemnation involving a public improvement, although the condemnation was not exercised against the property which was judicially declared to have been injured. We further noted that under exceptional circumstances compensable injury may occur absent the existence of a formal declaration where a course of action or conduct on the part of a government deprives an owner of real and material rights in and enjoyment of property ownership. Then in *Hudock* we declared that the approval and funding of an urban renewal or redevelopment project by governmental authority followed by notices to and negotiations with affected property owners were not in themselves sufficient to establish a substantial interference with one's use and enjoyment of his property as to amount to a de facto "taking" or compensable injury within the meaning of the Eminent Domain Code.

In the instant case the record discloses that over a period of years numerous alternative routes for the Ohio River Boulevard Extension have been proposed and publicized; if any one of them is adopted Conroy-Prugh's property will be taken incident to construction of the improvement. As a result of this petitioner alleges loss of tenants and income from tenancies.

While not unmindful of the consequences that may possibly be visited upon property and property values by reason of planning by governmental bodies, particularly in those cases where voluntarily—or as required by law—publicity is given to a public improvement project and public hearings are conducted incident thereto, we do not believe that these consequences as a matter of law are within the concept of a de facto "taking" or compensable injury within the meaning of the Eminent Domain Code. It is generally recognized that the mere plotting or planning in anticipation of

a public improvement does not constitute a "taking" or compensable injury to the property affected. Annot., 37 A.L.R. 3d 127 (1971). Absent physical intrusion upon or physical damages to property a de facto "taking" occurs or compensable injury is sustained only in those cases where the governmental body by its affirmative action or course of conduct directly interferes with one's use and enjoyment of his property and the injury complained of is the direct consequence of such action or course of conduct. To hold otherwise in this class of cases would expose governmental bodies to liability for damages for all adverse consequences to property and property values, no matter how remote, associated with the planning of public improvement projects. In our opinion the Legislature did not intend such a result in adopting the more liberal provisions of the present Eminent Domain Code with respect to damages.

Order affirmed.