Charles D. Vance and Patricia H. Vance, His Wife, Plaintiffs, *v.* Jacob G. Kassab, Secretary of the Department of Transportation of the Commonwealth of Pennsylvania and H. J. Williams Company, Defendants.

Argued September 5, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Paul L. Zeigler,* with him *Goldberg, Evans & Katzman,* for plaintiffs.

*Harry C. Jackson,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for defendant, Kassab.

*Stuart M. Neely,* with him *Stetler & Gribbin,* for defendant, H. J. Williams Company.

OPINION BY JUDGE ROGERS, October 7, 1974:

The plaintiffs, Charles D. Vance and Patricia H. Vance, his wife, seek our order restraining the Secretary of the Department of Transportation and H. J. Williams Company, a road builder, from constructing a pipe to drain water from a township road. The defendants have filed preliminary objections in the nature of demurrers raising the Commonwealth's and the Secretary's constitutional immunity from suit.

A demurrer, of course, admits as true all facts which are well and clearly pleaded, but not the pleader's conclusions or statements of law. *Commonwealth's Crosstown Expressway Appeal,* 3 Pa. Commonwealth Ct. 1, 281 A. 2d 909 (1971). The plaintiffs aver that they are the owners of real property[1] in Cumberland County; that the Secretary of Transportation has ordered the design and construction of a state highway and has engaged the defendant, H. J. Williams Company, to do the

---

[1] By their deed attached to the complaint we gather that the plaintiffs' property when they purchased it in 1965 for $31,850 contained about 25 acres, that it abuts Conodoquinet Creek, and that it was improved with a dwelling house and barn.

work; that as a part of the project, a township road will be relocated and improved, in connection with which a drainage pipe will be installed in lands of persons other than the plaintiffs for the collection of water running across and along the township road; that the drainage pipe will "have the effect" of discharging water onto the plaintiffs' land and across it "approximately 250 feet where it will empty into Conodoquinet Creek"; that this discharge of water will cause erosion and other unspecified damage to the plaintiffs' land; and that the pipe will cause a discharge of road tars and "other chemicals" onto the plaintiffs' land. We infer from several essentially legal averments that the plaintiffs mean to allege that tar and "other chemicals" will also reach the creek. By way of law, the plaintiffs aver that the proposed discharge of surface waters will be in violation of Section 401 of The Clean Streams Law, Act of June 22, 1937, P. L. 1987, *as amended*, 35 P.S. §691.401[2] (Supp. 1974-1975), and of the rights of the plaintiffs under the Constitution of Pennsylvania, Article I, Section 27.[3]

We have concluded that the complaint must be dismissed, but not on the grounds asserted by the defendants. While the Commonwealth's immunity extends to actions for injunctive relief (*Conrad v. Commonwealth, Department of Highways*, 441 Pa. 530, 272 A. 2d 470

---

[2] Providing: "It shall be unlawful for any person or municipality to put or place into any of the waters of the Commonwealth, or allow or permit to be discharged from property owned or occupied by such person or municipality into any of the waters of the Commonwealth, any substance of any kind or character resulting in pollution as herein defined. Any such discharge is hereby declared to be a nuisance."

[3] Providing: "The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people."

(1971)), suits which seek to restrain state officials from performing affirmative acts alleged to be unlawful or unconstitutional acts are not barred (*Philadelphia Life Insurance Company v. Commonwealth*, 410 Pa. 571, 190 A. 2d 111 (1963)). Contrary to the defendants' contention, the plaintiffs do not seek affirmative action on the part of the Secretary, which would be barred by the principle of immunity, but that he be restrained from installing the drainage facilities claimed prospectively to be productive of an allegedly illegal and unconstitutional discharge of water. The cases are collected and explained in *Philadelphia Life Insurance Company v. Commonwealth, supra,* and in *Joseph F. McIlvaine v. Frank McKetta and Joseph J. Kelley, Jr.,* 1 Pa. Commonwealth Ct. 262, A. 2d (1971).

The disqualifying infirmity of the plaintiffs' complaint, it seems to us, is its failure to state a cause within equity's jurisdiction. The Department of Transportation has specific statutory power to do what the Secretary here proposes—the construction of facilities for carrying surface waters from the public roads. Section 417 of the State Highway Law, Act of June 1, 1945, P. L. 1242, *as amended,* 36 P.S. §670-417, is pertinently as follows: "The department shall have authority to enter upon any lands or enclosures, and cut, open, maintain, and repair such drains or ditches, inlets or outlets through the same as are necessary to carry the waters from roads, highways, or within, at the top, or base of, slope areas, constructed or improved at the expense of the Commonwealth or under its supervision. Any damages sustained by the owner or owners of land entered upon by the department for such purposes, shall be paid in the same manner as provided by this act in the construction of State highways. The determination of the amount of damage shall be in accordance with the provisions of Article III of this act." This provision of the statute is cited by the Department as being applica-

ble to the facts and as providing for damages to the plaintiffs for the injuries they allegedly will sustain.

The Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, *as amended*, 26 P.S. §1-201 et seq., would be applicable[4] should the defendant Secretary discharge water into the plaintiffs' land in the manner and with the effect described by the complaint. The Commonwealth would be obliged to file a declaration of taking. To this the plaintiffs might then file preliminary objections challenging the "power or right" of the condemnor to appropriate their property on the grounds advanced in their complaint here. There is thus provided a clearly adequate and complete statutory remedy and it has been so held. *Valley Forge Golf Club v. Upper Merion Township,* 422 Pa. 227, 221 A. 2d 292 (1966). In the case just cited the following appears: "Section 303 of the Code states that, with certain exceptions not here pertinent, the act is intended 'to provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages therefor. . . .' Thus it is clear that the legislature did not contemplate resort to the equity courts by either condemnor or condemnee in matters of the kind presently before us. Equity has been completely displaced as the forum for condemnation matters by the procedures established by the Eminent Domain Code, pursuant to which (1) the courts of common pleas are given exclusive jurisdiction (§401); (2) the condemnor must file a declaration of taking, with sufficient security (§§402, 403); (3) the

---

[4] Section 302 of the Code makes it applicable to all condemnations; Section 903 repeals inconsistent Acts or parts of Acts; Section 201(3) includes the Commonwealth within the definition of "condemnor;" Section 201(1) defines "condemn" as the act of taking, injuring or destroying private property; and Section 402 provides that all condemnations shall be effected by the filing of a declaration of taking.

condemnor must give notice of the condemnation to the local recorder of deeds and to the condemnee (§§404, 405); (4) and the condemnee may file preliminary objections to the declaration of taking, which are declared by statute to be the exclusive method of challenging the condemnation proceedings (§406)." 422 Pa. at 228, 221 A. 2d at 293. While the concurring opinion of Justice ROBERTS indicates his disagreement with the majority's further holding that the Code then provided an adequate remedy for damages for loss of possession pending the disposition of preliminary objections, the court was unanimous in holding that equity had no jurisdiction to embark on an inquiry concerning the validity of a taking which had not as yet taken place—exactly what the plaintiffs here seek that we should do.

Our case of *Pennsylvania Gas and Water Company v. Jacob G. Kassab,* 14 Pa. Commonwealth Ct. 564, 322 A. 2d 775 (1974) relied on by the plaintiffs, is clearly different. There, a public utility serving domestic water to 25,000 customers in and near Wilkes-Barre and some of its customers, including one substantial industry, sued to enjoin a highway project which, it was alleged, would result in the pollution and substantial reduction in capacity of the utility's reservoir. Not only was it not apparent on pleadings there filed that the customers of the utility would have recourse to the procedures of the Eminent Domain Code in the pursuit of their cause, the difference between an allegation that the supply of water to a large part of the public was endangered and an averment of prospective injury to land of one owner from the discharge of surface water is such that a decision not to grant summary judgment in the former case is no authority for dismissing preliminary objections in the latter.

Complaint dismissed.