## Commonwealth of Pennsylvania, Department of Transportation, Appellant, *v.* Securda & Company, Inc., Appellee.

Argued September 11, 1974, before Judges Crumlish, Jr., Wilkinson, Jr. and Rogers, sitting as a panel of three.

*Lawrence R. Weider,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellant.

*Alan I. Baskin,* with him *Baskin, Mendelsohn & Leisawitz,* for appellee.

Opinion by Judge Crumlish, Jr., December 6, 1974:

The Court of Common Pleas of Berks County dismissed preliminary objections of the Commonwealth of Pennsylvania, Department of Transportation (Com-

monwealth) to a petition for the appointment of viewers filed by Securda & Company, Inc. (Securda). The Commonwealth appeals the decision to us.

On February 19, 1969, the Commonwealth filed a plan in the Office of the Recorder of Deeds in Berks County demarcating the right-of-way lines for that portion of Legislative Route 1075 passing through Berks County. Pursuant to this plan, the Commonwealth purchased or, where necessary, condemned all properties totally within the right-of-way lines, but postponed acquisition of those properties partially within the right-of-way lines pending approval of the final design plans by the Governor. Securda is the owner of property plotted as vacant building lots partially within the recorded right-of-way lines in a portion of Spring Township, Berks County, known as "Lincoln Park, Third Addition." On April 11, 1973, Securda filed a petition for the appointment of a board of view in the court below averring that the Commonwealth had formally condemned those portions of its property totally within the aforesaid right-of-way lines, but had not taken adjoining portions of its property not wholly within the lines, and had therefore effected a "de facto taking" of the latter property. The Commonwealth filed preliminary objections to the petition on the grounds that (1) it fails to aver that a declaration of taking was filed, (2) it fails to set forth the date of the alleged taking or the manner in which the property was taken, (3) it fails to set forth any facts which would entitle Securda to consequential damages, (4) it fails to set forth a cause of action under the Eminent Domain Code, and (5) that the board of viewers does not have jurisdiction. Following the filing of an answer by Securda, the parties entered into a stipulation of facts incorporating the related factual posture, and the Commonwealth further stipulated that it "shall acquire some of the Securda & Co., Inc. properties shown on the plan of Lincoln

Park, 3rd edition . . . within the . . . right-of-way lines, and such additional property of condemnee as they [Commonwealth] may determine their needs to be." Upon a consideration of these averments and the facts stipulated to, the court below dismissed the preliminary objections. We reverse.

The issue before us is whether the averments of Securda's petition for the appointment of viewers, admitting as true all well pleaded facts but not conclusions of law, states a cause of action for a compensable injury by reason of a "de facto taking."

The concept of a "de facto taking" was recognized by the Legislature in the enactment of Section 502(e) of the Eminent Domain Code of 1964[1] which provides in part: "If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers . . . ." Such a taking occurs "when the entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property." *Griggs v. Allegheny County*, 402 Pa. 411, 414, 168 A. 2d 123, 124 (1961), *rev'd*, 369 U.S. 84 (1962). This Court has recognized that the concept of a "de facto taking" is "responsive to the reality that activities carried on incident to massive, complex and time consuming programs launched by government to solve some of the acute problems that beset our society *may* so substantially interfere with one's use and enjoyment of his property as to constitute a compensable injury in a constitutional sense or as being within applicable statutory law, even though the power of eminent domain has not been formally exercised against the property in question and there has been no physical intrusion of it." (Emphasis in original.) *Hazleton Rede-*

---

[1] Act of June 22, 1964, Special Sess., P. L. 84, *as amended*, 26 P.S. §1-502(e) (Supp. 1974-1975).

*velopment Authority v. Hudock,* 2 Pa. Commonwealth Ct. 670, 675, 281 A. 2d 914, 917 (1971). There we held, however, that the approval and funding of an urban renewal program, coupled with notices and negotiations with affected property owners, and the amicable acquisition of other properties in the designated area did not constitute a "de facto taking." *See also, County of Allegheny v. The Church of Jesus Christ,* 14 Pa. Commonwealth Ct. 510, 322 A. 2d 803 (1974).

The Commonwealth contends that the issue of whether a "de facto taking" has occurred here was resolved by our Supreme Court's decision in *Commonwealth Appeal,* 422 Pa. 72, 221 A. 2d 289 (1966). In *Commonwealth Appeal, supra,* the Court held that the mere recording of a plan designating the location of a proposed highway and the attendant publicity thereto did not amount to a "taking." The Court there used as its foundation the underlying holding that the recording of the plan could not constitutionally deprive an owner in the designated right-of-way of compensation for improvements to his property which were effected after the recording. As the recording itself did not effect a continued use or development of the vacant land involved, no "taking" occurred. What distinguishes the instant case from *Commonwealth Appeal, supra,* is the additional factor, stipulated by the Commonwealth, that the Commonwealth has either condemned, acquired amicably or intends to acquire numerous properties—including lots owned by Securda—within the plotted right-of-way and adjacent to Securda's remaining property. The effect of these condemnations and purchases is to mark with some certainty the path Legislative Route 1075 will take, and makes probable the eventual condemnation of Securda's property within the right-of-way lines. It is the inevitability of this partial condemnation of Securda's property which, *if properly pleaded and proved,* could deprive Securda of the bene-

ficial use and enjoyment of its remaining property, and therefore would establish a "de facto taking." *See Commonwealth's Crosstown Expressway Appeal,* 3 Pa. Commonwealth Ct. 1, 281 A. 2d 909 (1971).

The most recent decision finding that a de facto taking might have occurred during the preliminary planning stages of a highway construction project is *Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A. 2d 598 (1974).[2]   In that case, the owner of two commercial buildings adjacent to the north end of the West End Bridge in Pittsburgh contended that the publicity attending the promulgation of plans for the extension of a highway interchange on both sides of his property had so diminished the rental income of the properties that they had been listed for tax sale, and that therefore a "de facto taking" had occurred.   Although there was neither a history of acquisition or formal condemnation of surrounding properties, nor had a final location plan been approved or recorded, each of the seven design proposals for the interchange included a *complete* taking of appellant's property.   The Supreme Court held that the pleadings were sufficient to support a finding of a compensable injury within the intendment of Section 502(e) of the Eminent Domain Code because of (1) the inevitability of an eventual taking of appellant's property due to its proximity to the bridge; and (2) the alleged inability of appellant to utilize the properties for their highest and best commercial use because of the adverse impact of pre-condemnation publicity on their rental income.

Of controlling significance to the instant appeal, however, is the Court's discussion of the interrelationship of Section 502(e) and Section 604 of the Eminent Domain Code in *Conroy-Prugh Glass Co. v. Commonwealth, supra.*   Section 604, 26 P.S. §1-604, provides:

---

[2] *Reversing* 7 Pa. Commonwealth Ct. 66, 298 A. 2d 672 (1973).

"Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value."

The Commonwealth in *Conroy-Prugh*, as well as here, contended that Section 604 was enacted to solve the problem of an uncompensated decline in property values attendant to the publicity and governmental acquisition of properties in an area designated for future highway use. The Supreme Court, per Mr. Justice O'BRIEN, answered this argument as follows: *"While in ordinary circumstances, the presence of §604, which did not exist at the time of the Philadelphia Parkway case,* [250 Pa. 257, 95 A. 429 (1915)] *and the protections it affords a property owner whose property has declined in value because of the imminence of condemnation, might lead to a conclusion that a decline in value after the eventual location of a proposed condemnation has become fixed, without more, should not be enough to constitute a de facto taking,* the instant case does not involve such ordinary circumstances. Appellant is not simply a property owner whose property has declined in value due to the imminence of condemnation. Appellant is, instead, one who cannot use his property and, in fact, stands to lose his property because of the imminence of condemnation! According to appellant's averments, the Commonwealth's publicity about the imminence of condemnation has caused appellant to lose tenants at such an accelerating rate that rental income from the property is no longer sufficient to cover the taxes on the property. Thus, appellant finds itself facing a Treasurer's sale. Should we hold that no 'taking' has yet occurred until the formal condemnation, §604

of the Eminent Domain Code will be of no help to appellant because appellant will not be the owner of the property when the condemnation finally takes place. Recognizing, as we do, that the Commonwealth is required to publicize and hold hearing in advance of the initiation of formal condemnation proceedings, we still believe that when these hearings and this publicity cause the owner of a commercial property to lose tenants to such an extent that the property no longer generates sufficient income to pay the taxes, which, in turn, leads to a threatened loss of the proprty, that property owner has a right to the appointment of viewers to award it compensation for its property. To hold that a property owner in such circumstances has no such remedy, would be to deprive that property owner of his property without due process of law." (Emphasis added.) 456 Pa. at 392, 393, 321 A. 2d at 601, 602.

After a careful review of the pleadings and the stipulated facts before us, we conclude that Securda's dilemma is not the extraordinary situation involved in *Conroy-Prugh* where Section 604 of the Eminent Domain Code would not afford a property owner an adequate remedy for the loss suffered by a decline in property values attendant to an imminent condemnation. Contrary to Securda's argument to this Court and apparently the conclusion of the court below, neither the pleadings nor facts stipulated allege or admit that the acquisitions or condemnations affected thus far interfere with access to Securda's remaining lots, or that it is otherwise unable to use its remaining property, within or without the recorded right-of-way. Nor is there an averment, unlike *Conroy-Prugh Glass Co. v. Commonwealth, supra,* and *Commonwealth's Crosstown Expressway Appeal, supra,* that the imminence of the condemnation threatens Securda with the actual loss of its property. Securda is still free to develop his remaining

building lots as it wishes (although an admittedly unrealistic business gamble), and it will be compensated for any improvements made thereon when its property is formally condemned. *Commonwealth Appeal, supra.* Although it may well be that the recording of the right-of-way plan will have the effect of depreciating the sales value of Securda's remaining lots, adequate relief is provided by Section 604.

In conclusion, we hold that the petition for the appointment of viewers filed by Securda fails to state a cause of action. The court below erred when it dismissed the Commonwealth's preliminary objections.

Order reversed.