519 A.2d 1065

Condemnation of Property in the Borough of Homer City, County of Indiana, Pennsylvania, Owned or Reputed To Be Owned by Naponic Enterprises, Inc., by the Redevelopment Authority of the County of Indiana. Naponic Enterprises, Inc., Appellant.

Argued October 6, 1986, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

34

*Richard DiSalle,* with him, *Andrew L. Weil* and *Templeton Smith, Jr., Rose, Schmidt, Chapman, Duff* & *Hasley,* for appellant.

*Myron Tomb,* with him, *Errol S. Miller,* for appellee.

OPINION BY SENIOR JUDGE KALISH, January 6, 1987:

Naponic Enterprises, Inc. (Naponic) appeals from a decision of the Court of Common Pleas of Indiana County which dismissed its preliminary objections to a declaration of taking filed by the Redevelopment Authority of Indiana County (Authority). We affirm.

On November 30, 1983, the Authority condemned real estate of Naponic consisting of a restaurant, an apartment building, and a plumbing shop on Main Street in Homer City. All of these properties were situated in an area which was damaged by floodwaters from the Yellow Creek which had overflowed on July 20, 1977. It was all designated as a floodway area.

To this condemnation, Naponic filed preliminary objections contending that some or all of these proper-

ties had been taken prior to the filing of the declaration, in a *de facto* taking in the summer or autumn of 1978. Naponic claims just compensation should therefore include the value of any building that existed before the filing of the declaration, and that was destroyed by the flood. It bases its claim on section 602(c) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-602(c). This section affords to condemnees of property damaged by flood the before-flood value of their property when taken in connection with a flood prevention project.[1] The trial court dismissed the preliminary objections.

Our scope of review is to determine whether the findings are supported by substantial evidence and whether an error of law was committed. *Petition of Ramsey*, 31 Pa. Commonwealth Ct. 182, 375 A.2d 886 (1977).

The obvious intent of the Legislature in section 602(c) of the Code is that when property is taken as the result of an attempt to aid victims of a flood disaster, the market value of the property before the flood shall be considered in determining the measure of damages (before and after value). *Redevelopment Authority of City of Nanticoke v. Spencer*, 23 Pa. Commonwealth Ct. 77, 350 A.2d 442 (1976). This presupposes a taking preceded by planning, executing and financing of a project, similar to that which is involved in a blighted area project. It is not the planning, executing and financing of a project which triggers eminent domain compensation. Rather, it is the taking *de jure* or *de facto* which

---

[1] This section is applicable where damage from a disaster has occurred within three years prior to the initiation of negotiations for or notice of intent to acquire or order to vacate the property and during ownership of the property by the condemnee. Section 602(e) of the Code, 26 P.S. §1-602(e).

constitutes the required notice under section 602(e) of the Code, 26 P.S. §1-602(e).

Flexibility in planning and executing a project is required. While the plans may have included the Naponic property, the issue is whether such notice was given to the property owner within the time frame. Naponic contends that governmental activity and conduct were such as to constitute a *de facto* taking within the time frame. The Authority contends that a *de facto* taking never occurred and that notice to Naponic occurred at the *de jure* taking, outside of the time frame.

Based on substantial evidence of record, the trial court found the following facts to exist between July 20, 1977, the flood date, and July 20, 1980 (the three year time frame):

(1) In December, 1978, the Authority requested funding from the Pennsylvania Department of Community Affairs (DCA) to make a study concerning the acquisition of properties including Naponic's flood area, which was approved by DCA.

(2) On May 17, 1979, the question of funding the project was discussed at a public meeting conducted by the Authority.

(3) Further meetings were held, and finally, in 1980, the Authority revised its original funding request, based on an opinion of the Attorney General that residential needs of the community had priority over commercial needs, deleting from the original proposal the acquisition of Naponic properties, thus reflecting such priority.

The court also found that before July 20, 1980, rumors were circulating that Naponic properties were going to be taken; that Naponic had difficulty in obtaining long-term tenants for its apartments as a result of the rumored taking of its property; that business in Naponic's restaurant declined due to rat infestation

caused by the flood; and that the restaurant manager retired for health reasons.

The court also found that after July 20, 1980, Naponic had three tenants in its building at 205 North Main Street; that it was not until April, 1983 that Naponic contacted officials of the Authority regarding acquisition of its properties; and that funding was not available for acquisition of the Naponic properties until May, 1983.

A *de facto* taking occurs where a governmental agency, clothed with the power of eminent domain, engages in conduct which substantially infringes on the beneficial use of a person's property so that it has lost its value for which the property owner seeks compensation. *Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974).

There are no hard, fast rules in determining such a taking. It depends on the factual situations in each case. Recognizing the need to balance the flexibility of planning agencies with that of the property owner, our courts have concluded that the recording of final plans, newspaper articles, agency announcements, plans awaiting the Governor's approval, negotiations with owners, real estate appraisal, and rumors are not sufficient to constitute a *de facto* taking. *Commonwealth Appeal,* 422 Pa. 72, 221 A.2d 289 (1966); *Department of Transportation v. Securda* & *Co.,* 16 Pa. Commonwealth Ct. 40, 329 A.2d 296 (1974); *Hazleton Redevelopment Authority v. Hudock,* 2 Pa. Commonwealth Ct. 670, 281 A.2d 914 (1971).

But where such circumstances were accompanied by extraordinary circumstances resulting in the actual loss of the property, such as a loss of tenants and income, or a mortgage foreclosure, our courts have held that a *de facto* taking has occurred. *Conroy-Prugh; Department of Transportation v. Standard Investments Corp.,* 80 Pa. Commonwealth Ct. 649, 472 A.2d 282

(1984), *aff'd* 506 Pa. 337, 485 A.2d 392 (1984); *Peter Roberts Enterprises, Inc. v. Department of Transportation,* 31 Pa. Commonwealth Ct. 479, 376 A.2d 1028 (1977).

The theory behind *de facto* recovery involving commercial property is the right of expectation of a reasonable return by the owner on his investment. The focus in these cases is the extent of the interference by the governmental agency, and the impact on the owner's rights in the parcel, *i.e.,* whether the imminence of condemnation *threatened the actual loss* of the property, or simply a decline in value substantially due to the imminence of condemnation, for which compensation is provided in section 604 of the Code, 26 P.S. §1-604. *Visco v. Department of Transportation,* 92 Pa. Commonwealth Ct. 102, 498 A.2d 984 (1985).

The record shows that during the years 1978 and 1979 and into 1980, there were studies of the feasibility of a flood control program; that efforts were made to obtain funds; and that there were revisions of the plans according to certain required priorities and as to the acquisition activities of the properties. Planning agencies require this sort of flexibility, and it usually is accompanied by all sorts of rumors. However, the record shows that it was not this governmental activity which substantially infringed on the property owner's interest resulting in a threatened loss of safety. Rather, it was the flooding followed by rat infestation which resulted in the threatened loss of value to the restaurant and beneficial use of the other properties. There was nothing to indicate that the loss of some tenants threatened the loss of the properties.

Accordingly, we affirm the trial court.

ORDER

NOW, January 6, 1987, the order of the Court of Common Pleas of Indiana County, No. 1932 C.D. 1983, dated May 17, 1985, is affirmed.