Paul E. Helms, Appellant *v.* Chester Redevelopment Authority, Appellee.

Argued October 5, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS and BLATT.

*James N. Robertson*, with him *Robertson and Bullen*, for appellant.

*Samuel M. Tollen*, with him *Tollen and Tollen*, for appellee.

OPINION BY JUDGE ROGERS, November 15, 1977:

The appellant, Paul E. Helms, filed a petition for the appointment of viewers pursuant to Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-502(e), alleging a de facto taking of his property at 1336-40 West Ninth Street, Chester, Pennsylvania, by the Chester Redevelopment Authority (Authority). The Authority filed preliminary objections asserting that the appellant's petition failed to set forth any facts establishing a compensable injury or a condemnation. The Delaware County Court of Common Pleas, after a hearing, sustained the Authority's preliminary objections and this appeal followed.

The burden of establishing a de facto taking is on the condemnee and is heavy. He must prove the existence of exceptional circumstances which have substantially deprived him of the beneficial use and enjoyment of his property. *Commonwealth's Crosstown Expressway Appeal*, 3 Pa. Commonwealth Ct. 1, 281 A.2d 909 (1971). We believe that Mr. Helms did not sufficiently carry this burden.

Unfortunately, the court below did not make findings of fact. However, we can infer from its decision that any conflicts in the evidence were resolved in favor of the Authority. The record reveals that Helms owned the property referred to since 1927. He leased the premises to Chester AAMCO Transmission Company in February, 1966 at which time Helms claims he "first heard of something with reference to Chester Redevelopment Authority" that might affect his property. At some unspecified later time, a sign with

a map of the North Central Urban Renewal Area was erected near Helms' property. This map showed that the appellant's property was within the renewal project area but it could not be established that the Authority had designated appellant's property as one which would be condemned. At some time between 1970 and 1972, Chester AAMCO Transmission Company vacated the premises. Another tenant who had lived in a second-floor apartment on this property left in 1972 or 1973. The premises have not been occupied by any other tenants since that time and have been vandalized despite Helms' efforts to protect it. Helms has paid no property taxes since the time the property was vacated and has been notified that his property will be sold at a tax sale.

Although the testimony of witnesses is conflicting, there is evidence sufficient to support a finding that Helms was never told by the Authority that his property would be taken, and in fact, Helms' counsel was informed by the Authority in a letter dated September 14, 1973 that there were no plans to acquire Helms' property because no funds had been received for this purpose.

Helms contends that the actions of the Authority in generating publicity, holding public hearings, posting a map of the project near his property, and condemning other properties in his neighborhood constitute a de facto taking. We disagree and affirm the order of the court below sustaining the Authority's preliminary objections.

Helms was required to show that the Authority had substantially deprived him of the use and enjoyment of his property. *Conroy-Prugh Glass Co. v. Commonwealth*, 456 Pa. 384, 321 A.2d 598 (1974). While the record shows that Helms' property has been vacant for some time and that as a landlord, he has been without some use and enjoyment of it, the record does not establish that this condition and its result

is due solely to the activities of the Redevelopment Authority as distinguished from the conditions of the neighborhood which required its redevelopment. The fact that the Authority may have invited publicity as to its actions and proposals and that some properties near Helms' premises had been designated for acquisition or already acquired by the Authority do not alone establish a de facto taking. *See Department of Transportation v. Securda & Company, Inc.*, 16 Pa. Commonwealth Ct. 40, 329 A.2d 296 (1974); *Hazleton Redevelopment Authority v. Hudock,* 2 Pa. Commonwealth Ct. 670, 281 A.2d 914 (1971). As this Court stated in *County of Allegheny v. The Church of Jesus Christ*, 14 Pa. Commonwealth Ct. 510, 514, 322 A.2d 803-04 (1974): "Thus the Appellant's ratification of the proposed plan and notification to affected landowners and the resultant publicity does not alone establish a 'de facto' taking."

Helms argues that this case is "practically on 'all fours'" with the factual situations in the cases of *Conroy-Prugh Glass Co. v. Commonwealth, supra; Reingold v. Urban Redevelopment Authority*, 20 Pa. Commonwealth Ct. 266, 341 A.2d 915 (1975), and *Petition of Cornell Industrial Electric Inc.*, 19 Pa. Commonwealth Ct. 599, 338 A.2d 752 (1975). We do not agree that these cases are on "all fours" with the case presently before us and, on the contrary, believe that they are all clearly distinguishable. In *Cornell, supra,* the condemnee had been told by the Urban Redevelopment Authority of Pittsburgh that its property was marked in the proposed plans for acquisition within two years. Not only was there no question that the property would ultimately be acquired, the landowner had also been told that it should be prepared to relocate before the time of acquisition and, relying on this advice, had moved to another location. Unlike the condemnee in *Cornell*, the appellant here has not adduced uncontradicted evidence that he had been

told that his property would be acquired. There is no evidence that Helms had been advised to keep the premises untenanted or told by the Authority to do anything at all on account of the Authority's plans.

In *Reingold, supra,* the Authority actually made an offer of $21,000 to the condemnee for her property. This offer was rescinded when the plans for the renewal project were altered. However, Ms. Reingold was advised not to enter into a long-term lease with any tenant because of the possibility that her property would be acquired pursuant to an alternate phase of the renewal plan. Ms. Reingold was therefore unable to rent the property and we found that a de facto taking had occurred. Ms. Reingold's situation differs from that of the appellant in that the Urban Redevelopment Authority in *Reingold* had entered the very threshold of condemnation of her property.

In *Conroy-Prugh, supra,* the condemnee proved that acquisition of his property was inevitable because his property was located at the end of a bridge from which connecting ramps had to be built to connect the bridge with a proposed new highway. The inevitability of condemnation on which the Supreme Court in *Conroy-Prugh* placed emphasis is not present in the instant case. There is no evidence here that acquisition of Helms' property was inevitable and some evidence that it was never even contemplated by the Authority.

The court below was correct in concluding that Helms had failed to establish a de facto taking of his property and in sustaining the preliminary objections of the Chester Redevelopment Authority.

Accordingly, we enter the following

## Order

And Now, this 15th day of November, 1977, the order of the Delaware County Court of Common Pleas dated July 2, 1976 in the above captioned matter is hereby affirmed.