R. & S. Millwork, Inc., Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued November 2, 1978, before Judges MENCER, DiSALLE and CRAIG, sitting as a panel of three.

*Robert L. Webster, Jr.*, with him *Webster, Hallal & Webster*, for appellant.

*Benjamin B. Wechsler, II,* Special Assistant Attorney General, with him *Robert W. Cunliffe*, Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, May 15, 1979:

This is an appeal from an order of the Court of Common Pleas of Fayette County, entered October 31, 1977, denying the motion of R. & S. Millwork, Inc. (condemnee) for a new trial.

Condemnee owned approximately 18.5 acres of land in Fayette County. In 1974, a declaration of taking was filed by the Commonwealth of Pennsylvania, Department of Transportation (PennDOT/condemnor), pursuant to Section 402 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-402, by which it acquired approximately one-third of condemnee's property.

Condemnee petitioned for a board of viewers and, after a hearing, was awarded $55,000 in damages. PennDOT appealed to the Court of Common Pleas of Fayette County and, after a trial, condemnee's damages were reduced to $45,973. Condemnee made a motion for new trial which was denied, timely appeal being taken to this Court.

In its motion for new trial, condemnee alleged that a valuation expert hired by condemnor withheld and concealed evidence on cross-examination relevant to the basis of his opinion of the property's valuation, that he withheld such evidence at the direction of condemnor's attorney, that the expert's failure to testify materially prejudiced the outcome of the trial, and that the misconduct and concealment was not discovered until after the trial.[1]

On appeal, condemnee contends that the lower court's denial of its motion for new trial was a manifest and palpable abuse of discretion.

We must disagree for two reasons:

First: Condemnee failed to substantiate its allegation that condemnor's valuation expert willfully concealed evidence at the behest of the condemnor's at-

---

[1] Condemnee originally sought a new trial on two grounds: (a) after-discovered evidence and (b) inadequacy of the jury verdict. At oral argument, in recognition of the holding of *Tinicum Real Estate Holding Corp. v. Department of Transportation*, 480 Pa. 220, 389 A.2d 1034 (1978), the second argument was abandoned, and condemnee sought a new trial solely on the basis of after-discovered evidence.

torney and that the outcome of the valuation trial was prejudiced as a result thereof.

After a special evidentiary hearing on the merits of condemnee's motion for new trial, the court below found the evidence introduced by condemnee insufficient to prove its allegations. Findings of fact, questions of credibility, and resolution of testimonial conflicts are for the trial court, not this Court on review. *Lawner v. Engelbach*, 433 Pa. 311, 249 A.2d 295 (1969); *Kisu Rhee v. Allegheny Intermediate Unit Number 3*, 11 Pa. Commonwealth Ct. 394, 315 A.2d 644 (1974). The findings of the court being in accordance with the substantial weight of the evidence and not in capricious disregard of competent testimony will not be disturbed.[2]

Moreover, the allegations of condemnee are contradicted by the record of the valuation trial where the acts of misconduct and concealment of testimony allegedly occurred. The record is devoid of any action constituting misconduct on the part of condemnor's attorney or an attempt to conceal evidence by condemnor's expert. To the contrary, the record indicates that on cross-examination condemnor's expert answered fully and completely all questions propounded by condemnee relating to the cost of reproduction or calculation of depreciation as used in his final valuation of the property.[3]

---

[2] At the special evidentiary hearing below, condemnee offered the testimony of only two witnesses in support of its allegations. The majority of the testimony was uncorroborated hearsay and, even though admitted without objection, was of questionable probative value, since the context of the only statement which supported a finding of misconduct on the part of condemnor was not developed, making its meaning unclear and subject to several interpretations.

[3] Record, pages 281 to 294. In particular: Condemnee alleged condemnor's expert concealed testimony relating to computation of his depreciation figure. Review of the record reveals evidence to the contrary:

628

Second: The nature of the evidence allegedly discovered by the condemnee subsequent to the valuation trial was insufficient to secure a new trial.

To secure a new trial on the ground of after-discovered evidence or discovery that false testimony was given, " 'the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result. . . .' " *Townsend Will*, 436 Pa. 185, 190, 258 A.2d 518, 520 (1969) (emphasis, citations omitted); *Freed v. Priore*, 247 Pa. Superior Ct. 418, 424, 372 A. 2d 895, 899 (1977).

In its motion for new trial, condemnee alleged that condemnor's expert concealed evidence relating to his computation of costs of reproduction and depreciation. Methods of computation go to the basis of the expert's opinion and were sought solely for the purpose of impeaching credibility. As *Townsend, supra,* indicates, post-trial discovery of impeachment evidence is not a sufficient ground to secure a new trial.

Accordingly, we affirm the denial of condemnee's motion for new trial and hold that, under the facts of this case, its denial was not an abuse of discretion.

Order affirmed.

ORDER

AND Now, this 15th day of May, 1979, the order of the Court of Common Pleas of Fayette County denying the motion of condemnee, R. & S. Millwork, Inc., for a new trial, is affirmed.

---

Q. And where did you obtain that figure from sir? . . .

A. I took 15 years depreciation what I call actual wear and tear, and on the building 15 years over 50 gave me 30%. In other words, I felt that there was 15 years usable, 50 years life of that building so that comes to 30%.