Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* J. Edward Lawton, III, and Jennifer R. Lawton, his wife, Appellees.

Argued February 8, 1980, before Judges WILKIN-SON, JR., MENCER and CRAIG, sitting as a panel of three.

*Marie Inyang,* Special Assistant Attorney General, with her *John T. Clary, Jr.,* Special Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Edward G. Biester,* Attorney General, for appellant.

*Murray S. Eckell,* with him *Nicholas J. Emper,* of *Eckell, Sparks, Vadino, Auerbach and Monte,* for appellees.

OPINION BY JUDGE WILKINSON, JR., March 14, 1980:

Alleging a "de facto" taking, the appellees commenced this litigation with a petition for the appointment of viewers filed pursuant to Section 502(e) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e). The Court of Common Pleas of Delaware County dismissed preliminary objections of the Commonwealth of Pennsylvania, Department of Transportation (Department) to the petition. The Department appeals to this Court.

Appellees own approximately 30 acres in Springfield Township. Located on their property are appellees' residence, a school building (rented out for a winter school), a swimming pool and camp buildings (at which the appellees used to run a summer camp and at which a tenant ran a summer camp in 1975, 1976, and 1977). Since 1959 the Department has proposed construction of legislative route 1010 (Blue Route), which is to be a six lane limited access route connecting the Pennsylvania Turnpike in Montgomery County with Interstate 95 in Delaware County. Within Delaware County there are ten "sections" of Blue Route that are presently planned, numbered south to north as Blue Route, A1 to Blue Route, C2. Appellees' property would fall in proposed section A3. Of the ten sections, only one section has been constructed (section B4) in the northern end of Delaware County. There have been acquisitions and condemnations in other sections. In October 1963 an "ultimate" right of way plan which included part of appellees' land was filed in the Delaware County Recorder of Deeds Office. An actual right of way plan for section A3 has neither been recorded nor approved, and the Department has not filed a Declaration of Taking to condemn appellees' property.

Averring that as a result of the Department's actions and of the publicity of the imminence of the formal condemnation of their land by the Department the appellees have been unable to obtain the fair market value of the property through sale or the fair rental value of the property and have consequently not paid the real estate taxes on the property for the years 1977 and 1978 and are threatened with the eventual loss of the property, the appellees filed on October 16, 1978 a petition for the appointment of viewers. The Department filed preliminary objections to the petition on the grounds that the Department never deprived the appellees of the beneficial use and enjoy-

ment of the property and that the acts complained of are merely preliminary, incidental and foreseeable ones preparatory to a possible condemnation. After a hearing, the court of common pleas found that a de facto taking of appellees' land had occurred and dismissed the Department's preliminary objections.

The issues before us are (1) whether the lower court properly concluded that the averments of appellees' petition are legally sufficient to state a cause of action for compensable injury by reason of a de facto taking, and (2) whether the lower court erred in finding that the date of the de facto taking was October 16, 1978, the date on which appellees filed the petition for the appointment of viewers.

As this Court has recently stated:

> When confronted with a petition for appointment of viewers alleging a de facto taking to which a preliminary objection in the nature of a demurrer is filed, the lower court must first decide whether as a matter of law the averments of the petition, taken as true, are sufficient to state a cause of action of a de facto taking. If not, the preliminary objections must be sustained and the petition dismissed or the petitioner allowed to amend his pleading. If the averments, taken as true, might establish a de facto taking, the lower court must take evidence by deposition or otherwise so that a judicial determination might be made. If the averments on their face establish a de facto taking, then the preliminary objections must be dismissed.

*Harborcreek Township v. Ring*, 48 Pa. Commonwealth Ct. 542, 410 A.2d 917 (1980). It is not contested that an order dismissing preliminary objections to a petition for the appointment of viewers alleging a de facto taking is a final and appealable order.

In the instant case the court of common pleas found that the Department's activities relevant to appellees' claim included 19 years of public proclamations of the Blue Route, public statements of the imminence of formal condemnation of properties in its path, public announcements that just compensation would be paid for properties condemned, media announcements of actual condemnations and appraisal activity, and informing appellees that their property is needed for the construction of the Blue Route.

In order for a condemnee to prove that a de facto taking has occurred, he must show exceptional circumstances which have substantially deprived him of the use and enjoyment of his property. *Perfection Plastics, Inc. Appeal*, 28 Pa. Commonwealth Ct. 396, 368 A.2d 917 (1977). It has been settled by our Supreme Court that the recording of plans like the "ultimate" plans in the instant case does not constitute a taking. *See Commonwealth Appeal*, 422 Pa. 72, 221 A.2d 289 (1966). Nor do the actions of an authority vested with eminent domain powers in generating publicity, holding public hearings, posting a map of the project near a landowner's property, and condemning other properties in the landowner's neighborhood constitute a de facto taking. *Helms v. Chester Redevelopment Authority*, 32 Pa. Commonwealth Ct. 377, 379 A.2d 660 (1977). Further, the appellees here have not alleged the kinds of significant activity by Department agents as regards appellees' property that alone would constitute a de facto taking. *See Petition of Cornell Industrial Electric, Inc.*, 19 Pa. Commonwealth Ct. 599, 338 A.2d 752 (1975) (redevelopment authority's representatives told landowner that its property was going to be acquired and suggested that landowner should be prepared to relocate sometime before the acquisition; landowner's property was appraised); *Commonwealth's Crosstown Expressway Appeal*, 3

Pa. Commonwealth Ct. 1, 281 A.2d 909 (1971) (Department gave notice of the imminence of condemnation to tenants and owners of properties, including the tenants and prospective tenants of the premises of petitioner, and urged the City of Philadelphia to impede private development of properties within a proposed highway).

The thrust of the appellee's petition is that the proposed Blue Route and the concomitant publicity of the imminence of formal condemnation have caused loss of rental income, unmarketability of the property, and the threat of loss at a sheriff's sale for unpaid taxes. These averments are similar to the facts in *Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974), a de facto taking case involving two four-story interconnected industrial buildings located at the end of a bridge to which the Commonwealth planned to build connecting ramps from a proposed highway. Our Supreme Court held that the landowner's averments that (1) the location of the proposed public improvement had become so fixed that condemnation of its property was inevitable, (2) publicity over an extended period about the imminence of that inevitable condemnation had caused the property owner to lose tenants so that the property no longer generated sufficient income to cover taxes and operating expenses, and (3) as a consequence, the property owner faced the loss of its property, were sufficient "significant facts" to establish a de facto taking of property by the effects of a proposed highway and to entitle the landowner to relief under Section 502(e) of the Code. In the instant case the appellees have averred the existence of a proposed plan for the Blue Route and the threat of eventual loss of their property through a tax sale. The focus of our inquiry is whether the appellees have demonstrated by substantial evidence that a formal condemnation of

their land was inevitable and that the loss of rental income and the unmarketability of the property was the proximate result of the Department's activities.

A careful review of the record convinces us that there is substantial evidence supporting the appellees on these two points. In addition to evidence of the Department's activities as recounted above and of acquisitions and appraisal activity in all sections of the Blue Route, the record includes testimony by one appellee that a Department official told her that the land was in the "direct path" of the route, testimony by the Department's chief negotiator for southeastern Pennsylvania that appellees' property lies in the direct path between Blue Route sections A2 and B1, and testimony by a Delaware county real estate appraiser that appellees' tract is in a straight line with Blue Route sections A2 and B1. The record is replete with substantial evidence that the loss of rental income the appellees suffered and the unmarketability of their land was the proximate result of the Department's activities. The summer camp lessee testified that he decided not to conduct the camp after 1977 because as a result of Blue Route litigation he was unable to have the appellees give him a lease for such a period of time ensuring his continually being able to offer his summer program to the children in the area. The school building lessee testified that she decided not to buy appellees' tract because of the lost summer rentals and for fear that the Blue Route would come through. A local developer/investor testified that he had made an offer to buy appellees' property but withdrew it because of the proposed Blue Route taking. A realtor who had listed appellees' property for sale testified that the impending problem with the Blue Route had made appellees' property unmarketable. In *Conroy-Prugh, supra* at 392-3, 321 A.2d at 602, our Supreme Court wrote:

Recognizing, as we do, that the Commonwealth is required to publicize and hold hearings in advance of the initiation of formal condemnation proceedings, we believe that when these hearings and this publicity cause the owner of a property to lose tenants to such an extent that the property no longer generates sufficient income to pay the taxes, which, in turn, leads to a threatened loss of the property, that property owner has a right to the appointment of viewers to award it compensation for its property. To hold that a property owner in such circumstances has no such remedy would be to deprive that property owner of his property without due process of law.

We conclude that the court of common pleas properly concluded that appellees had made out a cause of action for a de facto taking.

The Department also raises the issue whether the court below erred in finding that the date of the de facto taking was October 16, 1978, the date on which appellees filed the petition for the appointment of viewers. Section 602(a) of the Code, 26 P.S. §1-602 (a), clearly provides that just compensation due a condemnee must be calculated with reference to the date of condemnation. *Hassett v. Department of Transportation,* 34 Pa. Commonwealth Ct. 368, 384 A.2d 594 (1978). The case law is silent on the subject of determination of the point in time when a de facto taking occurred. The Department has not argued that it is prejudiced by the date found by the court of common pleas. Indeed, all the protections provided by the Code, including the provision in Section 604, 26 P.S. §1-604, that any decline or increase in the fair market value caused by the general knowledge of the imminence of the condemnation is to be disregarded in determining fair market value, will still be effective. In

light of the peculiar and cumulative facts in this case, we find no error by the court below.

Accordingly, we will enter the following

ORDER

AND Now, March 14, 1980, the order of the Court of Common Pleas of Delaware County, docketed at No. 78-15328, dated May 30, 1979, dismissing the preliminary objections filed by the Commonwealth of Pennsylvania, Department of Transportation, is affirmed.

President Judge BOWMAN did not participate in the decision in this case.