In Re: Condemnation by the County of Allegheny, a political subdivision of the Commonwealth of Pennsylvania of certain properties in Moon Township etc.

Allegheny County, Tom Foerster, Chairman of the Board of County Commissioners, Cyril H. Wecht, M.D. J.D., County Commissioner, and William R. Hunt, M.D., County Commissioner, Appellants.

Argued October 9, 1981, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*James H. McLean,* County Solicitor, with him *Samuel P. Kamin,* Assistant County Solicitor, for appellants.

*Sandy W. Scichilone,* for appellees.

OPINION BY JUDGE CRAIG, December 9, 1981:

This de facto condemnation appeal is from an order of the Court of Common Pleas of Allegheny County, dismissing appellant Allegheny County's preliminary objections to a petition for the appointment of viewers filed by the appellees, twelve homeowners whose properties are located near the Greater Pittsburgh International Airport.

In July 1979, the homeowners, in response to the county's plan to construct and operate a new airport runway, filed a petition for the appointment of viewers. On April 18, 1980, the county began operating the new runway, now a primary runway for landings at the airport. The new runway's centerline is approximately 1200 feet from the centerline of a parallel former runway, so that the new glide path is directly over the residences of the homeowners.

Anticipating that change, the homeowners in their petition alleged that the operation of the new runway would result in a de facto taking of their properties due to damage to their properties caused by the new flight patterns requiring aircraft to fly closer to their homes. After an evidentiary hearing, the common pleas court held that, as of April 18, 1980, the date the county began operating the new runway, the county had taken the homeowners' properties within the provisions of the Eminent Domain Code (Code),[1] as a con-

---

[1] The Eminent Domain Code, Act of June 22, 1964, Spec. Sess., P.L. 84, *as amended,* 26 P.S. §1-101.

sequence of the effect of air traffic to and from the airport upon the properties.

A de facto taking occurs when the actions of the alleged condemnor substantially deprive an owner of the beneficial use and enjoyment of his property. *Helms v. Chester Redevelopment Authority*, 32 Pa. Commonwealth Ct. 377, 379 A.2d 660 (1977). Here the county contends that the record lacks substantial evidence[2] that the operation of the new runway caused changes to the homeowners' properties sufficiently drastic to deprive them substantially of beneficial use and enjoyment.

The county buttresses its contention by pointing to agreement of the noise experts on both sides that, even though the level of noise did increase at ten of the twelve homes after the new runway commenced operations, the level of noise had been in the normally unacceptable range even before the opening of the runway according to Department of Housing and Urban Development (HUD) guidelines.

However, we agree with the trial court's reasoning that, although the HUD guidelines provide helpful guidance, they are not conclusive on the issue of change of conditions. Furthermore, the impact of noise is only one factor to be considered in determining whether a de facto taking occurred.

The trial judge, acting as the factfinder, must weigh the credibility of the respective witnesses, and where, as here, the trial judge also viewed the location, we must give that factor substantial weight. *Croop v. Pennsylvania Department of Transportation*, 38 Pa. Commonwealth Ct. 305, 393 A.2d 41 (1978).

---

[2] Where, as here, the common pleas court dismisses preliminary objections to a petition for the appointment of viewers alleging a de facto taking, our scope of review is to determine whether there was substantial evidence to support the common pleas court's finding that a de facto taking had occurred. *Harborcreek Township v. Ring*, 48 Pa. Commonwealth Ct. 542, 410 A.2d 917 (1980).

At the common pleas court hearing, each of the homeowner witnesses presented uncontradicted testimony that direct overflights of their homes increased substantially with the opening of the new runway. They testified that, as a consequence, they experienced an increase in the level of noise and exhaust pollution which precluded them from enjoying outside activities at their homes in the same manner they had before the county began operations at the new runway.

Furthermore, some homeowners testified that a condition known as wing-tip vortex sometimes caused tremors at their homes, snapped branches from trees and hurled them through the air. The homeowners stated that these new conditions caused them to experience higher levels of anxiety which tend to affect their family lives adversely.

The homeowners conceded that, even before operations commenced at the new runway, they suffered daily inconvenience from living so close to the airport. However, the testimony outlined above, which the hearing judge found credible, is sufficient to support a finding that the operation of the new runway substantially deprived the homeowners of the beneficial use and enjoyment of their properties by dramatically changing their living conditions.

The parties offered conflicting expert evidence as to whether the market value of the appellees' properties had diminished because of the operation of the new runway. Here the court, in the proper exercise of its discretion, also resolved that conflict in favor of the homeowners. We can find no error in that decision.

Accordingly, we affirm the decision of the common pleas court.

### ORDER

Now, December 9, 1981, the order of the Common Pleas Court of Allegheny County, at No. G.D. 79-19418, dated December 5, 1980, is hereby affirmed.