In Re: Condemnation of Premises 320 Crestview Circle, Nether Providence Township, Delaware County, Pennsylvania, by the Pennsylvania Department of Transportation for Highway Purposes. Richard W. Merrick and Hannah F. Merrick, now deceased, Appellants.

Argued June 10, 1982, before Judges Blatt, Williams, Jr. and Craig, sitting as a panel of three.

*C. Norwood Wherry,* for appellants.

*Reginald H. Holder,* Assistant Counsel, with him *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellees.

Opinion by Judge Blatt, August 27, 1982:

This appeal arises from a petition filed by the petitioners, Richard W. and Hannah F. Merrick, requesting appointment of a jury of view, pursuant to Section 502(e) of the Eminent Domain Code (Code),[1] because of an alleged de facto taking of their property. On June 26, 1978 a jury of view was appointed, and on November 24, 1978 the Commonwealth filed preliminary objections in the nature of a demurrer, as-

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e).

serting that there had been no taking, to which the petitioners filed an answer three days later. Following two evidentiary hearings, the Court of Common Pleas of Delaware County sustained the preliminary objections, dismissed the petition and discharged the jury of view. This appeal followed.

By letter of February 10, 1967, the Pennsylvania Department of Transportation (DOT) had informed the petitioners that DOT employees or contractors would be entering upon the petitioners' property, a single-family residence on Crestview Circle, Wallingford, to perform tests and surveys in connection with the planned construction of the Delaware County Mid-County Expressway, known as the Blue Route. In August, 1968 the petitioners purchased property in Cape May County, New Jersey, contracted to have a home built there, and moved to that residence in May, 1969. On May 21, 1969, in response to an inquiry from the petitioners, DOT advised them that the proposed Blue Route would require a total taking of the Crestview Circle property and that an offer would be forthcoming in a month to six weeks' time. By letter of June 20, 1969, DOT offered the petitioners $42,500.00 and indicated that possession would be required by October 1, 1969. The petitioners were next contacted by DOT by letter of November 26, 1969 in which they were notified that acquisition of their property had been deferred and that the previous offer was withdrawn unless it should later be reinstated in writing. In December, 1969 the petitioners began renting the Crestview Circle property and have continued renting it from that time.

Our scope of review in a case where the trial court has sustained preliminary objections to a petition for appointment of viewers is limited to determining whether or not the findings are supported by competent evidence or an error of law has been committed.

*Petition of Ramsey,* 31 Pa. Commonwealth Ct. 182, 375 A.2d 886 (1977).

The petitioners contest the preliminary objections filed by DOT, and although the precise nature of their objection is not entirely clear, their argument would seem to be that DOT's preliminary objections are tainted by being in the nature of a demurrer and untimely filed. It is well-settled, however, that:

When confronted with a petition for appointment of viewers alleging a de facto taking to which a preliminary objection in the nature of a demurrer is filed, the lower court must first decide whether as a matter of law the averments of the petition, taken as true, are sufficient to state a cause of action of a de facto taking. If not, the preliminary objections must be sustained and the petition dismissed or the petitioner allowed to amend his pleading. If the averments, taken as true, might establish a de facto taking, the lower court must take evidence by deposition or otherwise so that a judicial determination might be made. If the averments on their face establish a de facto taking, then the preliminary objections must be dismissed.

*Harborcreek Township v. Ring,* 48 Pa. Commonwealth Ct. 542, 544, 410 A.2d 917, 918 (1980). DOT, therefore, employed the appropriate form of pleading to contest the appointment of viewers, and the court held two evidentiary hearings before reaching its decision to sustain the objections. In addition, Section 504 of the Code, 26 P.S. §1-504, requires that such preliminary objections must be filed within twenty days after receipt of notice of the appointment of viewers. A review of the record reveals that the June 26, 1978 order appointing the viewers was filed on June 27, 1978 but there is no evidence as to when DOT received notification of the appointment. However, even if DOT was

notified promptly, in which event, its November 26, 1978 preliminary objections would have been untimely filed, the petitioners did not object below to their timeliness, and they failed, thereby, to preserve the issue for review upon appeal. The petitioners responded to DOT's preliminary objections by way of an "answer" in which the timeliness of the former pleading was not challenged. However, the proper manner in which to raise a challenge to the preliminary objections would have been by a preliminary objection to the preliminary objections in the form of a motion to strike for lack of conformity to law or rule of court. Pa. R.C.P. No. 1017(b); *Milk Marketing Board v. Sunnybrook Dairies, Inc.*, 32 Pa. Commonwealth Ct. 313, 379 A.2d 330 (1977). Having failed to raise the matter below, the petitioners are deemed to have waived their objection to the untimeliness of DOT's pleading. *Rufo v. Bastian-Blessing Company*, 417 Pa. 107, 207 A.2d 823 (1965).

Preliminary objections admit as true all facts which are well and clearly pleaded, but not the pleader's conclusions or averments of law, *Commonwealth's Crosstown Expressway Appeal*, 3 Pa. Commonwealth Ct. 1, 281 A.2d 909 (1971). The question before us, therefore, is whether or not the trial court erred in determining that averments contained in the petitioners' petition for the appointment of viewers, when so considered, failed to state a cause of action for compensable injury by reason of a de facto taking. *Id.*

The petitioners argue that, under the circumstances present here, a de facto taking of their property was effected. They note that the publicized highway plans showed a total taking of the property, that DOT sent them a written notification of intention to take, and that DOT appraised the property and then communicated a written offer to purchase coupled with notice of the date on which the Commonwealth

would take possession. The petitioners assert that they have been deprived of the use and enjoyment of their family home and that where, as here, there is no market for the property because of the planned Blue Route, there has been a taking.

Section 502(e) of the Code, 26 P.S. §1-502(e) provides that:

> If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers . . . setting forth such injury.

A de facto taking is deemed to have occurred when an entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property, *Petition of Cornell Industrial Electric, Inc.,* 19 Pa. Commonwealth Ct. 599, 338 A.2d 752 (1975). And the burden of establishing that such a taking has occurred is upon the party so contending. This burden is a heavy one, for one so asserting must prove the existence of exceptional circumstances which have substantially deprived him of the use and enjoyment of his property. *Helms v. Chester Redevelopment Authority,* 32 Pa. Commonwealth Ct. 377, 379 A.2d 660 (1977).

It is well-settled that neither the recording of plans, nor the actions of the state in generating publicity, holding public hearings, and condemning other properties in the landowners' neighborhood constitute a de facto taking. *Department of Transportation v. Lawton,* 50 Pa. Commonwealth Ct. 144, 412 A.2d 214 (1980). The factors involved in a planning stage, however, must be considered when further actions in an acquisition stage have occurred which may constitute a de facto taking. *Cornell.* The petitioners assert that their situation here is similar to that of the property owner in *Cornell,* where a de facto taking was found

to have occurred. In *Cornell,* the property owner was advised that its property was going to be acquired, the condemning authority suggested that the owner prepare to relocate sometime before the acquisition, and the property was appraised. Then the owner, in reliance on the representations made by the condemning authority in the exercise of sound business judgment, vacated its commercial property, and, when succeeding tenants vacated the property, the vacant property and the general condition of the neighborhood fostered extensive theft and vandalism. The condition of the property and of the area in which it was located combined with the imminence of acquisition, served effectively to foreclose the owner's ability to rent or sell the property. In that case, we found that a de facto taking had occurred because the condemnor's actions had

> destroyed any potential rental or purchase market for the property. The property is essentially useless. Appellee is left with the cost of maintaining the property, yet with no ability to make use of it or have it generate any income.

*Id.* at 604, 338 A.2d at 755. Such is not the lot of the petitioners presently before us. Except for the seven-month period which elapsed between the time of their vacating the property and their rental of it subsequent to DOT's advice that acquisition of the property had been deferred, the property has been rented. It was, therefore, income producing at all times, and the petitioners have not suffered a deprivation of its use and enjoyment. *Miller Appeal,* 55 Pa. Commonwealth Ct. 612, 423 A.2d 1354 (1980). As noted by the trial court:

> Although it appears that plans for the Blue Route have not been altered with respect to the petitioners' property, no final right of way has been established. With over ten years of controversy concerning the Blue Route intervening

between the time of petitioners' receipt of the letter from the Commonwealth of Pennsylvania deferring acquisition plans and the present time, we cannot conclude that the taking of the petitioners' property is inevitable. The property has not been rendered useless nor does the owner face loss of his property. In fact, the property has been a source of income through the years to the present time. Petitioners have failed to produce any evidence indicating that the publicity surrounding the Blue Route has caused them to lose tenants or prevent them from finding new ones. Over the past ten years, petitioners have imposed additional rent increases on the tenants, generating further income and have voluntarily chosen to forego other rent increases. Because of their belief that they would lose tenants or be unable to recoup their costs, petitioners chose to omit major repairs and additional rental costs.

The petitioners are not, therefore, in the position of the owner in *Cornell*, where, as a result of the owner's inability to generate sufficient income from the property to pay its taxes, the property might have been sold for taxes before a condemnation award was forthcoming, *Conroy-Prugh Glass Co. v. Commonwealth*, 456 Pa. 384, 321 A.2d 598 (1974), or, in the alternative, if the condemning authority should alter its plans, before the owner's property could again achieve the status of being desirable for rental or purchase.

Furthermore, the petitioners here cannot prevail in their assertion that DOT's actions have resulted in their having been deprived of the use and enjoyment of their family home. It is clear from the record that they contracted to have a new home built in New Jersey nine months before DOT's May 21, 1969 advice that their property would be taken and a condem-

nation offer would be forthcoming, and examination of the record shows that DOT's June 20, 1969 letter by which the offer was made and the vacation date stated, was delivered to the petitioners at their new New Jersey residence.

The petitioners having failed to establish their entitlement to the appointment of viewers, we will, therefore, affirm the order of the trial court.

### ORDER

AND Now, this 27th day of August, 1982, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is affirmed.