## Paper Products Manufacturing Co. v. Commonwealth

*Peter J. Nolan,* for petitioner.
*Sandra L. Guydon,* assistant counsel, for Commonwealth.

LABRUM, *J.,* November 9, 1983—Petitioner, Paper Products Manufacturing Company, brought an action for the appointment of viewers pursuant to section 502(e) of the Eminent Domain Code, 26 P.S. §1-502(e). The Commonwealth of Pennsylvania, Department of Transportation, filed preliminary objections to the petition. The matter was heard before this court and by order dated July 11, 1983, the preliminary objections were dismissed based on a finding that a de facto taking of petitioner's property did occur. The order further stated that the Jury of View would proceed with its task. The Commonwealth appealed the aforesaid order to the Commonwealth Court.

We make the following findings of fact and conclusions of law in order to assist the appellate court in its review:

## FINDINGS OF FACT

1. Petitioner, Paper Products Manufacturing Company, is the owner of approximately 34.5 acres in Springfield and Nether Providence Townships, Delaware County, Pa.

2. Respondent, Commonwealth of Pennsylvania, Department of Transportation (Penn Dot), is a duly

authorized department which represents the transportation interests of the Commonwealth of Pennsylvania and is charged with the responsibility of developing and maintaining a continuing, comprehensive and coordinated transportation planning process and acquiring property by eminent domain necessary to implement its responsibilities.

Prior to the commencement of the present condemnation action, Penn Dot and its predecessor, the Pennsylvania Department of Highways, developed and began implementing a plan known as Legislative Route 1010 (Blue Route) in Delaware County.

The Blue Route is to be a six-lane limited access highway connecting the Pennsylvania Turnpike in Montgomery County with Route I-95 in the city of Chester, Delaware County, and its proposed location was made public on or before December of 1959.

3. The proposed location of the Blue Route is in a path that runs directly through and bisects petitioner's property, requiring a right-of-way of approximately 15.8 acres of petitioner's property for the highway, leaving separate parcels of 18.7 acres, part of which will be landlocked.

4. Respondent has informed petitioner that the subject property is needed for the construction of the said highway and might require the taking of a part of the subject property.

5. Penn Dot has not filed a declaration of taking to condemn petitioner's property.

6. In furtherance of the implementation of the Blue Route Plan, properties have been acquired by the Commonwealth for the construction of the said route and a section of the roadbed has been laid in Delaware County to date.

7. Over the past 23 years prior to the commencement of the present condemnation action, there has

been publicity in the Commonwealth of Pennsylvania, especially in the tri-county area of Philadelphia, Montgomery and Delaware Counties, of the imminent condemnation of properties directly situated in the path of the proposed Blue Route.

8. Such publicity includes public proclamations concerning the Blue Route, public statements of the imminent formal condemnation of properties situated in its path, public announcements that just compensation would be paid for properties condemned, public hearings and media announcements of actual condemnations and appraisal activity.

9. The publicity of the imminence of the formal condemnation of petitioner's property by respondent in connection with the construction of the Blue Route has resulted in petitioner being unable to obtain the fair market value of its property at private or public sale.

10. As a result of the aforesaid action of respondent, petitioner has incurred difficulty in the management of the aforesaid property and has suffered a great financial loss and will so continue to suffer financial losses in the future.

11. As a result of the actions of respondent, petitioner does not have sufficient income to meet its financial liabilities, such as building maintenance costs, repair costs, insurance premiums and real estate taxes, many of which are of a continuing nature.

12. As a further result of respondent's actions, petitioner has been unable to develop or market its property. This has resulted in a total depreciation of petitioner's rights and interests in its property with no compensation therefor.

13. The action on the part of Penn Dot and the consequences to petitioner have resulted in a con-

demnation taking of petitioner's property without a formal declaration of taking.

14. The date of the de facto taking is May 4, 1979, the date on which petitioner filed a petition in this court for the appointment of viewers.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the issues raised in this matter.

2. A de facto condemnation of petitioner's property did occur in the above matter, the date set at May 4, 1979, the date on which petitioner filed a petition in this court for the appointment of viewers.

3. Petitioner has suffered damages and is entitled to just compensation as a result of the aforesaid de facto condemnation.

## DISCUSSION

It has long been the established rule in this Commonwealth that a government's interference with an individual's property rights can in certain circumstances be so substantial that it may constitute a de facto taking even though the power of eminent domain is not formally exercised. In Re Condemnation by Commw. of Pa., etc., Appeal of Northeast Outdoor Advertising, Inc., 69 Pa. Commw. 609, 452 A.2d 81 (1982).

In the present case, the actions of the Commonwealth in announcing its intention over the years to construct the Blue Route in the area of petitioner's property, conducting meetings with affected property owners, acquiring properties near that of petitioner and creating general public knowledge of a major highway being placed in the subject area compelled this court to determine that a de facto taking of petitioner's property had occurred.

Our appellate courts have held that a de facto taking occurs when an entity clothed with eminent domain power substantially deprives an owner of the use and enjoyment of his property. Redevelopment Authority of City of Oil City v. Woodring, 498 Pa. 180, 445 A.2d 724 (1982); Lando v. Urban Redevelopment Authority of Pittsburgh, 49 Pa. Commw. 566, 411 A.2d 1274 (1980).

In the instant case, petitioner has been unable to obtain the fair market value of its land as a result of the acts taken by the Commonwealth. Additionally, petitioner has been unable to develop its land without suffering a risk of loss. This has resulted in a total depreciation in the property with no compensation to petitioner. The property has been so damaged as to adversely affect petitioner's beneficial use and enjoyment of the property.

See the comprehensive opinion of Judge Wilkinson, in Commonwealth of Pennsylvania, Department of Transportation v. J. Edward Lawton, III et ux 50 Pa.Commw. 144, 412 A.2d 214 (1980), a case arising from this county and involving a neighborhood property wherein a finding of a de facto taking was affirmed.

For the foregoing reasons, this court found a de facto taking of petitioner's property by the Commonwealth.