505 A.2d 342

Gamma Swim Club, Inc., Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued December 13, 1985, before Judges CRAIG and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*John T. Mulligan, Lord & Mulligan,* for appellant.

*Scott M. Olin,* Assistant Counsel, with him, *Edward D. Werblun,* Assistant Counsel, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellee.

OPINION BY JUDGE CRAIG, February 18, 1986:

Gamma Swim Club, Inc. appeals from an order of the Court of Common Pleas of Delaware County sustaining preliminary objections of the Department of Transportation (department) to the swim club's petition for the appointment of viewers alleging a de facto eminent domain taking.[1]

Also before us is the swim club's motion to remand.

### Motion to Remand

The swim club has requested a remand to the trial court to allow it to present evidence as to matters which have occurred since the hearing in May, 1984. This court is familiar with motions to remand because the lower court or administrative body failed to make necessary findings of fact or the findings of fact and conclusions of law were inconsistent, or because the applicable law had changed since the original proceeding. This court is also familiar with motions for a new trial to consider after-acquired evidence. However, neither statute nor case law provides for consideration of events which have occurred since the

---

[1] Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(e).

original proceeding. Because the swim club's motion most closely resembles a motion for new trial to consider after-acquired evidence, we will evaluate the motion before us in that light.

The party requesting a new trial must demonstrate that the after-acquired evidence: (1) was discovered after the trial; (2) could not have been obtained by reasonable diligence in time for trial; (3) is not cumulative or merely to impeach credibility; and (4) is likely to compel a different result. *R. & S. Millwork, Inc. v. Department of Transportation*, 42 Pa. Commonwealth Ct. 624, 401 A.2d 587 (1979).

The swim club asserts in its motion that "the additional evidence it now has is [not] necessary to its case." That cautious assertion negates the requisite that the evidence to be considered is likely to compel a different result, making a remand here meaningless.

Accordingly, we will deny the swim club's motion to remand.

### Merits as to De Facto Taking

Concerning the concept of de facto taking, section 502(e) of the Eminent Domain Code states:

If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers. . . .

A de facto taking occurs when an entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property. *Conroy-Prugh Glass Co. v. Department of Transportation*, 456 Pa. 384, 321 A.2d 598 (1974).

The trial court adopted the parties' stipulation of facts. The 11.6 acre swim club is directly in the path of Legislative Route 1010 in Delaware County, known as the Blue Route. The department had informed the swim club that its property would be needed for con-

struction of the highway, but did not file a declaration of taking to condemn the swim club's land. During the twenty-four years before the swim club filed its petition, there had been substantial publicity about the imminence of condemnation of properties directly situated in the path of the Blue Route. Although the trial court did not make a finding regarding the swim club's membership, testimony indicated that "at one time" there were 400 dues-paying bondholders. The number of dues-paying bondholders began to decline in the mid-70's to a low of 102 dues-paying bondholders in 1984. The trial court noted that the swim club continued to pay all taxes but did not adopt the swim club's assertion that its property was in disrepair and that it lacked necessary income to maintain its upkeep.

The trial court dismissed the swim club's petition for appointment of viewers because (1) the swim club was not "in danger of loss by tax sale or mortgage foreclosure," and (2) the swim club did not demonstrate that its property was unmarketable "since the subject property has never been advertised or listed for sale nor has it been shown to any prospective buyer."

The issue is whether substantial evidence supports the trial court's decision that the swim club did not establish a de facto taking of its property.[2] Although substantial evidence supports the court's findings, and the trial court did not commit an error of law, we will affirm the dismissal of the petition for the appointment of viewers on different grounds than those of the trial court.

_____

[2] This court's scope of review in a case where the trial court sustained preliminary objections to a petition for appointment of viewers is limited to determining whether the findings are supported by substantial evidence or an error of law was committed. *Merrick Appeal*, 68 Pa. Commonwealth Ct. 506, 449 A.2d 820 (1980).

The Supreme Court stated in *Conroy-Prugh* that a commercial property owner had to allege significant facts to entitle him to relief to support the petition for the appointment of viewers under section 502(e) of the Eminent Domain Code. One of the significant facts alleged in *Conroy-Prugh,* mentioned in a footnote, was that the owner was facing the loss of his property because of the property's inability to generate enough rental income to pay taxes. The threat of losing one's property is indicative of a loss of income. Consequently, that loss of income tends to confirm the loss of value of the property. In a commercial setting, a showing of imminence of condemnation has destroyed the capacity of the property to generate income will result in a conclusion that "the property of the appellant has been injured and what the [entity with the power of eminent domain] has done constitutes a taking in the constitutional sense," for the reason that there has been a deprivation of its use and enjoyment. *Conroy-Prugh,* 456 Pa. at 391, 321 A.2d at 601, quoting *Philadelphia Parkway,* 250 Pa. 257 (1915).

However, proof of a threatened loss of title to the property is not indispensable. A threat of such loss cannot be always the determinant because title loss can depend on the means and inclination of the owner. Willingness to continue paying taxes, despite adverse circumstances affecting the land, should not penalize the owner. Here, the swim club could have used whatever income it generated to maintain the upkeep of its property and ignored its tax obligations. We do not believe that the legislature or the courts have intended to encourage that result in recognizing the concept of a de facto taking.

Additionally, the legislature has provided protections to a property owner whose property has declined

in value because of the imminence of condemnation; section 604 of the Eminent Domain Code,[3] provides:

Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value.

However, as the court noted in *Conroy-Prugh*, a decline in value because of the imminence of condemnation, without more, should not be enough to constitute a de facto taking.

Section 604 instructs that, in establishing fair market value in these cases, the courts must disregard the property's decline in value attributable to the imminence of condemnation. Section 604 alone, however, does not provide adequate protection to the commercial property owner who relies on the property's ability to generate income, as opposed to a residential property owner or a commercial property owner whose property is not used to generate income.

If the commercial property owner had to reach the position of losing the property as a requirement of de facto taking, the compensation provided through the application of section 604 would be inadequate because it would not compensate for the intervening years of declining income.

Thus, in order for the commercial income property owner to demonstrate a de facto taking, the focus cannot be confined to situations where the property owner is facing the loss of the property.

Regarding the trial court's second conclusion concerning the swim club's marketability, this court has

[3] 26 P.S. §1-604.

held that it is not imperative that the property owner alleging a de facto taking must have unsuccessfully exposed the property to sale. *Department of Transportation v. Standard Investments Corporation,* 80 Pa. Commonwealth Ct. 649, 472 A.2d 282 (1984). That mode of demonstration is a method of proof, not an indispensable legal requirement.

Here the trial judge, as factfinder, indicated that the imminence of condemnation had not diminished the swim club's ability to generate income to the extent that the swim club was substantially deprived of the use and enjoyment of its property. The swim club offered the testimony of an appraiser, which the judge did not accept. We agree with the trial court's conclusion that the swim club failed to show that the circumstances deprived it of the use and enjoyment of its property. *Department of Transportation v. Lawton,* 50 Pa. Commonwealth Ct. 144, 412 A.2d 214 (1980).

Accordingly, we affirm the trial court's order sustaining the department's preliminary objections and dismissing the swim club's petition for the appointment of viewers.

· ORDER

. Now, February 18, 1986, we deny the swim club's motion to remand to the trial court.

We affirm the order of the Court of Common Pleas of Delaware County, dated December 31, 1984.