96 Pa. Commonwealth Ct. 306 (1986)
507 A.2d 899
In Re: The Petition of Logan J. Harr, Jr. and Emma E. Harr, his wife, Tenants by the Entireties, for the Appointment of Viewers to ascertain damages to their land in Unity Township, Westmoreland County, Pennsylvania, by reason of use of and location of the Glide Path and Landing Approach of the Westmoreland County Airport Authority. Westmoreland County Airport Authority, Appellant.
In Re: The Petition of Ronald J. Harr and Paula A. Harr, his wife, Tenants by the Entireties, for the Appointment of Viewers to ascertain damages to their land in Unity Township, Westmoreland County, Pennsylvania, by reason of use of and location of the Glide Path and Landing Approach of the Westmoreland County Airport Authority. Westmoreland County Airport Authority, Appellant.
Nos. 611 C.D. 1985 and 612 C.D. 1985.
Commonwealth Court of Pennsylvania.
Argued March 14, 1986.
April 9, 1986.
Argued March 14, 1986, before Judge CRAIG, and Senior Judges BLATT and KALISH, sitting as a panel of three.
*307 Charles C. Mason, Jr., with him, Gene E. McDonald, Lightcap, McDonald, Moore & Mason, for appellant.
William J. Ober, Ober, Campfield, Ferraro & McCreary, for appellees.
OPINION BY JUDGE CRAIG, April 9, 1986:
Westmoreland County Airport Authority appeals from an order of the Court of Common Pleas of Westmoreland County dismissing the authority's preliminary *308 objections to homeowners' (Ronald J. and Paula A. Harr and Emma E. and Logan J. Harr, Jr.) petitions for the appointment of viewers alleging de facto eminent domain taking[1] as a consequence of the effect of air traffic to and from the Latrobe Airport upon their properties.
The court made the following undisputed factual findings. Homeowners Logan and Emma Harr have resided in a two-story farm house on their 94 acres of property since 1946. Their son and daughter-in-law, Ronald and Paula Harr, live in a home approximately 100 feet away on a small lot which his parents conveyed to them in 1963. The homeowners cultivate their land and raise beef cattle. The airport property and the homeowners' properties are adjacent to each other.
The homeowners' properties are 5,504 feet from the end of Runway 5-23 and will be 4,000 feet distant when the airport's runway expansion is completed. The centerline of Runway 5-23, when extended, passes over both properties, most directly over the residence of Logan and Emma Harr.
Annually there are 21,500 flight operations to and from the southwest, using Runway 5-23 and hence involving flights over the homeowners' properties. The number of flights per day averages 59, with heavier traffic in the summer.
Landings onto Runway 5-23, controlled by the visual approach slope indicator, pass over the homeowners' residences at an altitude of 279 to 291 feet.
One hundred thirty-two aircraft are based at the airport, half of which are single-engine aircraft. Occasional charter flights of the DC-9 and 737 class use the airport, *309 but not on a regular basis. Approximately two to six aircraft land or take off each day after the control tower closes at 10:30 p.m.
A de facto taking occurs when an entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property. Helms v. Chester Redevelopment Authority, 32 Pa. Commonwealth Ct. 377, 379 A.2d 660 (1977). Direct aircraft overflights which substantially interfere with peaceful use and enjoyment of private property entitle a landowner to damages, in that they effectuate a taking. Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed. 2d 585 (1962).
The issue is whether the airport's aircraft overflights substantially interfered with the homeowners' use and enjoyment of their property. The authority also raises the issue of the admissibility of an environmental assessment report which addressed the aircraft noise level at the homeowners' properties.

The Admissibility of the Environmental Assessment
The trial court admitted into evidence an environmental assessment which the authority had submitted, as required, to the Federal Aviation Authority for approval of a proposed 150-foot runway expansion. The authority's engineering firm prepared the report specifically to address the environmental impact of the airport, present and future, upon the surrounding community. That report indicated that the day-and-night sound level (Ldn) for the homeowners' properties, without consideration of the proposed runway expansion, was 73 Ldn. That report further indicated that noise levels between 65 and 75 Ldn are normally unacceptable for residential areas.
The authority objected to the admission of its own report because the engineers had based their assessment on computer projections rather than actual field *310 studies. The court correctly ruled that the nature of the projections went to the weight of the evidence, not admissibility, and allowed the report into evidence. The court treated the noise level evidence as a single factor in its overall evaluation. Furthermore, the court also noted that the authority failed to produce any evidence comprised of actual noise studies to rebut the computer projections.
The authority also argues that the homeowners failed to demonstrate that the environmental assessment method of using computer projections was generally accepted by the scientific community as being reliable and, therefore, that the report should have been inadmissible. Because the authority failed to articulate that reason when it objected to the admissibility of the evidence at the trial, that reason was waived and cannot be asserted here for the first time. Siter v. Maryland Peat & Humus Co., 242 Pa. Superior Ct. 184, 363 A.2d 1221 (1976).

Merits  De Facto Taking
The authority contends that the record lacks sufficient evidence of interference with the homeowners' property rights to constitute a taking as a matter of law.[2] In support of that contention, the authority refers to a number of state and federal cases  each with a similar fact element relating to distance or noise level or number of overflights  where courts have denied de facto taking. Those cases, however, each addressed a single issue, such as noise levels, which is only one factor to be *311 considered in a de facto taking determination. Allegheny County Appeal, 63 Pa. Commonwealth Ct. 99, 102, 437 A.2d 795, 797 (1981). Because de facto condemnation cases must be reviewed on a case-by-case basis, to evaluate the totality of the evidence in each case, isolating single factors in making comparisons with other cases is not conclusive or necessarily appropriate.
The authority asserts that our decision in Petition of Ramsey, 31 Pa. Commonwealth Ct. 182, 375 A.2d 886 (1977), is controlling because of the similarity of numerous factual issues. The homeowners in Ramsey filed a petition for the appointment of viewers in 1975, alleging a de facto taking because of the Latrobe Airport's flight operations. Although the same airport is involved in this case, the facts are otherwise distinguishable.
The homeowners in Ramsey complained that particular types of jet aircraft caused interference. The court found that only three to five of those jet aircraft flew over the homeowners' property each day. Here, the homeowners complained that all types of aircraft were causing interference. The court here found that an average of 59 aircraft per day flew over the homeowners' properties.
The homeowners in Ramsey complained that airport flight operations interfered with their radio and television reception, but they failed to introduce evidence to support that contention. Here, the homeowners complained that aircraft overflights interfered with their enjoyment of television. The judge found that testimony credible.
Moreover, the homeowners' property in Ramsey was approximately 150 feet from the centerline of the runway and glide path and therefore not subjected to direct overflights. Although we held in City of Philadelphia v. Keyser, 45 Pa. Commonwealth Ct. 271, 273, 407 A.2d 55, 56 (1979), that "this court has never limited a de *312 facto taking of an aircraft easement to the factual situation of direct overflights," the fact that the homeowners in this case were subjected to direct overflights necessarily provides an increased degree of support for the trial judge's overall evaluation.
Because the factual issues are not as similar as the authority asserts, Ramsey is not controlling in this case.
The authority also challenges the trial court's reliance on Griggs by itself arguing factual distinctions, asserting that the interference with use and enjoyment in Griggs dwarfed the impact of the alleged interference here. However, the trial court relied on Griggs only for the proposition that direct overflight interference could constitute a de facto taking, without purporting to suggest that the particular factual elements in Griggs exhaustively demonstrated the principle.
The trial court made specific factual findings relating to the interference with the homeowners' use and enjoyment of their properties, as follows: The aircraft passing over created noise to the extent that conversations by occupants over the telephone were interrupted; television sound could not be heard; windows and pipes rattled; landing lights shone into a bedroom; cattle were frightened; petroleum film settled on the homeowners' lawn; an aircraft had crashed 200 yards nearby; and the FAA report indicated that aircraft sound levels on the properties were unacceptable. The combination of evidence outlined above, based on testimony which the trial judge found credible  together with the undisputed facts regarding the distance and number of overflights  is sufficient to support the trial judge's ultimate finding that the airport's operations substantially interfered with the homoeowners' use and enjoyment of their properties.
Accordingly, we affirm.

*313 ORDER IN 611 C.D. 1985
Now, April 9, 1986, the order of the Court of Common Pleas of Westmoreland County, Docket No. 6486 of 1984, dated February 4, 1985, is affirmed.

ORDER IN 612 C.D. 1985
Now, April 9, 1986, the order of the Court of Common Pleas of Westmoreland County, Docket No. 6487 of 1984, dated February 4, 1985, is affirmed.
NOTES
[1] Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. §1-502(e).
[2] Where, as here, the common pleas court dismisses preliminary objections to a petition for the appointment of viewers alleging a de facto taking, our scope of review is to determine whether there was substantial evidence to support the common pleas court's finding that a de facto taking had occurred. Allegheny County Appeal, 63 Pa. Commonwealth Ct. 99, 437 A.2d 795 (1981).