555 A.2d 312

Condemnation of Property Located at 20 West Mahoning Street in The Borough of Danville, Owned By Ruth Iles, by The Commonwealth of Pennsylvania and The Borough of Danville, Condemnors. Ruth Iles, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued September 15, 1988, before Judges PAL-
LADINO and SMITH, and Senior Judge BARBIERI, sitting as
a panel of three.

*Robert A. Schwartz,* with him, *John A. Mihalik,
Hummel, James & Mihalik,* for appellant.

*Daniel L. Sullivan, Shearer, Mette, Evans & Wood-
side,* for appellee, Borough of Danville.

*William J. Cressler,* Assistant Counsel, for appellee,
Department of Transportation.

OPINION BY JUDGE SMITH, March 13, 1989:

Appellant Ruth Iles (Iles) appeals from the order of
the Court of Common Pleas of Montour County which
sustained preliminary objections raised by Appellees
Borough of Danville (Borough) and the Pennsylvania
Department of Transportation (DOT) to Iles' petition for
appointment of viewers pursuant to Section 502(e) of the

Eminent Domain Code.[1] The sole issue presented for review is whether the trial court erred in finding that Iles failed to establish a *de facto* taking.

Iles, a Borough property owner, petitioned the trial court for appointment of viewers, seeking just compensation for damages allegedly caused by Appellees' actions. Iles contended that subsurface vehicular vibrations generated by a substantial increase in traffic travelling through the intersection adjacent to her premises[2] caused irreparable structural damage sufficient to render her premises uninhabitable. Iles further contended that the substantial increase in traffic resulted from Appellees' road construction activities and that defective road surface grading by the Borough resulted in formation of a bump in the subject intersection which enhanced the vibrations generated by vehicles travelling through the intersection.

Preliminary objections to Iles' petition were filed by DOT and adopted by the Borough, alleging non-occurrence of a *de facto* taking. The trial court, after evidentiary hearing, found that Iles failed to establish that Appellees' actions caused exceptional circumstances sufficient to constitute a *de facto* taking, and accordingly, sustained Appellees' preliminary objections. Hence, this appeal.[3]

Iles contends that the trial court failed to comprehend the evidence and that the trial court's findings were

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-502(e).

[2] Both parties stipulated that Iles' residence was at least 100 years old. N.T., p. 144.

[3] This Court's scope of review, where, as here, the trial court sustained preliminary objections to a petition for appointment of viewers, is limited to determining whether the findings are supported by competent evidence or an error of law has been committed. *Merrick Appeal*, 68 Pa. Commonwealth Ct. 506, 449 A.2d 820 (1982).

incomplete, arbitrary, and against the weight and sufficiency of the evidence. To the contrary, the trial court clearly considered the evidence presented by both parties and resolved evidentiary conflicts against Iles in reaching a determination consistent with the expert and lay testimony of Appellees' witnesses, Arthur R. Yotter, Jr. and Robert L. Casner, respectively.

Yotter performed a seismograph analysis[4] of vehicular vibrations generated by traffic travelling through the intersection adjacent to Iles' premises. He testified on direct examination that only the heaviest vehicles provided any particle velocity[5] reading whatsoever; that .047 was the highest particle velocity reading obtained; that a reading below 2.0 is considered safe; and that structural damage to a residence as a result of traffic conditions here is extremely unlikely. N.T., pp. 122-123, 126-128. On cross-examination, Yotter testified that he conducted this vibration study to provide the highest possible particle velocity readings and that the vehicular vibrations in question could not have a cumulative effect so as to cause structural damage to a residence over a period of time. N.T., pp. 140-141.

Casner, on the other hand, testified that he leased a portion of the subject premises from Iles' predecessor-in-interest prior to the actions undertaken by Appellees. He further testified that some of the structural damage to the subject premises, which Iles attributes to increased traffic and concomitant vehicular vibrations, existed during the period of his tenancy. N.T., pp. 145-148.

---

[4] A seismograph is a monitoring device used to measure and record vibrations. The data is then analyzed to determine the vibrations' potential for damage. N.T., p. 115.

[5] Particle velocity is the accepted standard for measuring the strengths of vibrations and their potential for structural damage. N.T., p. 126.

To establish occurrence of a *de facto* taking, Iles was required to demonstrate the existence of exceptional circumstances which substantially deprived her of the use and enjoyment of her property; that such substantial deprivation was caused by Appellees' actions; and that the damage to her premises was the immediate, necessary and unavoidable consequence of Appellees' actions. *Department of Transportation v. Steppler*, 114 Pa. Commonwealth Ct. 300, 542 A.2d 175 (1988). Moreover, resolution of evidentiary conflicts, issues of credibility, and findings of fact in eminent domain proceedings are for the trial court. *R. & S. Millwork, Inc. v. Department of Transportation*, 42 Pa. Commonwealth Ct. 624, 401 A.2d 587 (1979). The record here establishes that Iles continues to reside in her premises and to operate a beauty salon therein. Thus, Iles has not been substantially deprived of the residential or business use of her property.

The testimony upon which the trial court based its determination clearly constitutes competent evidence to support the trial court's finding that Iles failed to establish a causal nexus between the structural damage to her residence and the vehicular vibrations alleged to have resulted from Appellees' actions.[6] No error of law having

---

[6] Iles asserts that Yotter did not perform the seismograph analysis during peak traffic hours and failed to obtain particle velocity readings from passing coal trucks which allegedly generate the strongest vibrations. This assertion relates to the weight to be accorded the evidence, such determination being for the trial court as fact-finder and not this Court. Moreover, the eight seismograph readings recorded by Yotter primarily tracked movement of heavier vehicles travelling through the subject intersection. Defendant's Exhibit D3. Iles further asserts that the seismograph readings are inaccurate and unreliable since the seismograph was not placed in Iles' basement. Such placement, however, may have decreased the particle velocity readings depending upon whether Iles' basement was concrete or earth. Nonetheless, Yotter's vibration study was

been committed, the decision of the trial court is affirmed.

ORDER

AND NOW, this 13th day of March, 1989, the decision of the Court of Common Pleas of Montour County is affirmed.

Judge MACPHAIL did not participate in the decision in this case.

---

conducted so as to record the highest possible particle velocity readings. N.T., pp. 140-141. Iles' final assertion is that the trial court failed to address the effect of the intersectional bump upon vehicular vibrations. Again, Yotter's vibration study encompassed this road surface defect. Defendant's Exhibit D3.